# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 7, 2003 Session

## DIANNA BOARMAN v. GEORGE JAYNES

**Appeal by permission from the Court of Appeals,
Chancery Court for Washington County
No. 6052    Thomas R. Frierson, II, Chancellor**

---

**No. E2001-01049-SC-R11-CV - Filed June 19, 2003**

---

Dianna Boarman, the Clerk and Master for the Washington County Chancery Court, filed a complaint on September 30, 1998, pursuant to Tennessee Code Annotated section 8-20-101, *et. seq.*, seeking a pay increase for the three chief deputy clerks working in her office. Boarman later filed a second and third complaint for fiscal years 1999-2000 and 2000-01. Defendant George Jaynes, the Washington County Executive, answered denying that salary increases were necessary to enable Boarman to properly and efficiently conduct the business of her office. Jaynes also filed a counterclaim seeking the elimination of one deputy clerk position in Boarman's office. Boarman's complaints were consolidated, and a hearing was conducted before Chancellor Thomas R. Frierson, II, sitting by interchange. The trial court approved salary increases for the three chief deputy clerks. It denied the defendant's counterclaim. The Court of Appeals affirmed the trial court's denial of the county executive's counterclaim, but reversed the trial court's judgment increasing the salaries of Boarman's three chief deputy clerks. For the reasons stated herein, we reverse that part of the decision of the Court of Appeals which reverses the trial court's judgment approving the position of deputy clerk and increase in compensation. We affirm the Court of Appeals' dismissal of defendant Jaynes counterclaim.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed in Part; Affirmed in Part**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Arthur M. Fowler, Johnson City, Tennessee, for the appellant, Dianna Boarman.

K. Erickson Herrin, Johnson City, Tennessee, for the appellee, George Jaynes.

**OPINION**

1

## STATEMENT OF THE CASE

The appellant, Dianna Boarman, has served as Clerk and Master for the Chancery Court for Washington County, First Judicial District, since 1974. On September 30, 1998, the appellant filed a complaint pursuant to Tennessee Code Annotated section 8-20-101, *et. seq.*, seeking an increase in wages for certain deputy clerks above the salary increases budgeted and approved for fiscal year 1998-99 by the Board of County Commissioners. The authorized annual salary for each of the three chief deputy clerks was $25,688, and Boarman asked that the salaries of the three chief deputies be increased to $30,460 for fiscal year 1998-99. George Jaynes, the county executive for Washington County was named as defendant in the complaint.

In her sworn complaint, Boarman averred that she maintains an office in Jonesborough, Tennessee, where she employs two deputies. Plaintiff also maintains an office in Johnson City, Tennessee, where she employs five deputies. Boarman's petition further set forth in detail the duties of the personnel in both offices. In addition, Boarman stated, pursuant to Tennessee Code Annotated section 8-20-101(a), that she "cannot properly and efficiently conduct the affairs and transact the business of her office as clerk & master by devoting her entire working time thereto," and consequently needed deputies and assistants necessary to the proper maintenance of her office. In response, the defendant, George Jaynes, did not deny the need for the chief deputy clerks, but disagreed as to the increased level of compensation sought by Boarman. Eleven months later, prior to a hearing on the complaint, Boarman filed a second and third complaint also seeking increased salaries over and above the commission-approved salary adjustments for fiscal year 1999-2000 and 2000-01. In answer to the third complaint, the county executive not only denied that salary increases were necessary, but filed a counterclaim seeking the elimination of one of the previously-budgeted and funded deputy clerk positions in Boarman's office. The three complaints were consolidated, and an evidentiary hearing was conducted before Chancellor Thomas R. Frierson, II, sitting by interchange.[1]

After hearing extensive testimony regarding the appropriate level of funding for the positions of chief deputy clerk in the office, and proof of salaries of jobs comparable to that of chief deputy clerk, the trial court held that:

> The three chief deputy clerks who form the focus of the present action are skilled, experienced and competent county employees. Their varied job responsibilities provide valuable service to and benefit for Washington County. Their combined service to the county is 69 years. Considering the requisite statutory factors, as well as comparable salaries of other government employees doing similar duties, this Court determines that the annual salaries appropriated and

---

[1] On November 5, 1998, the chancellor and circuit judges of the First Judicial District recused themselves from hearing this case and, pursuant to Tennessee Code Annotated section 17-2-202(2), Chancellor Thomas R. Frierson, II from the Third Judicial District was designated to hear the case.

budgeted for the chief deputy clerks of the Clerk and Master's office of Washington County during fiscal year 1998-99 were below that then prevailing for the nature and type of services required and performed and less than reasonably necessary to retain competent personnel against the enticements of the public sector.

The trial court determined that the three chief deputy clerks were each entitled to annual compensation of $27,700 for fiscal year 1998-99. The trial court denied the counterclaim brought by the county executive and held, based upon the evidence presented, that the chief deputy clerk position Jaynes sought to eliminate was "essential for the proper and efficient operation" of Boarman's office.

The Court of Appeals affirmed the denial of defendant Jayne's counterclaim, but reversed that part of the trial court's decision which approved raises to the three chief deputy clerks. Addressing the construction of Tennessee Code Annotated section 8-20-101, the court held that "our courts have consistently required an office holder seeking relief under this scheme to make a threshold showing of his or her inability to properly and efficiently conduct the affairs of his or her office." The court then concluded that "[t]he evidence presented by Boarman does not meet the required showing, i.e., that she was unable to properly and efficiently conduct the affairs of her office by utilizing the efforts of her staff as constituted and compensated at the time of the filing of her complaint." Moreover, the court stated that "Boarman's suit, from its inception, has revolved around the question of the *fairness* of the salaries of her chief deputy clerks, rather than whether Boarman was able to conduct the affairs and business of her office."[2] The Court of Appeals stated that issues of fairness are "much more appropriately directed to the county legislative body responsible for the budgeting and appropriating of county funds." The court then concluded that "the evidence preponderates against the trial court's factual findings supporting its judgment fixing the salaries of Boarman's chief deputy clerks."

Before this Court, the appellant argues that the Court of Appeals misconstrued Tennessee Code Annotated section 8-20-101 *et. seq.*, by requiring her to show that she cannot effectively operate her office "by utilizing the efforts of her staff as constituted and compensated at the time of the filing of her complaint." The appellant maintains that the statutory scheme contained in Chapter 20 of Title 8 does not require a clerk and master to prove that she cannot operate her office at the compensation level offered by the county. She argues that the threshold requirement is only that an office holder demonstrate that he or she cannot operate the office "by devoting such person's entire

---

[2] Boarman testified that "I filed the lawsuit based upon that [a CTAS survey] and the fairness of what they're paid. I don't think they [*i.e.*, the Washington County Chief Deputies] receive a fair compensation." The "CTAS survey" referred to was a survey conducted by the Tennessee County Technical Assistance Service for fiscal year 1997-98. This survey showed annual budgeting salaries for county employees in selected counties. Based on the CTAS survey, Boarman alleged in her initial complaint that the Washington County "Chief Deputies during the last fiscal year only earned 85% of the average compensation of chief deputies in other comparable counties."

3

working time thereto." Once that showing has been made, the trial court may exercise "unfettered discretion" setting the salaries of the deputies and assistants. We granted review in this case to address the proper construction of Tennessee Code Annotated section 8-20-101, *et. seq.,* and to determine whether the evidence preponderates against the factual findings of the trial court.

## STANDARD OF APPELLATE REVIEW

In this case we are asked to decide questions involving the proper construction of Tennessee Code Annotated section 8-20-101, *et. seq.*, addressing the application for authority to employ deputies and assistants in the office of the clerks and masters of the chancery courts. Issues of statutory construction are pure questions of law. See Lipscomb v. Doe, 32 S.W.3d 840, 843-44 (Tenn. 2000) (citing Wakefield v. Crawley, 6 S.W.3d 442, 445 (Tenn. 1999); Jordan v. Baptist Three Rivers Hosp., 984 S.W.2d 593, 599 (Tenn. 1999)). Thus, our review of the lower court's construction of Tennessee Code Annotated section 8-20-101 *et. seq.*, is de novo without any presumption of correctness. See id. (citing Lavin v. Jordon, 16 S.W.3d 362, 364 (Tenn. 2000), Wells v. Tenn. Bd. of Regents, 9 S.W.3d 779, 783 (Tenn. 1999); Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 628 (Tenn. 1999)). However, in reviewing the trial court's findings of fact, we accord those factual findings a "presumption of correctness, which is overcome only when the preponderance of the evidence is contrary to the trial court's findings of fact." Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001).

## ANALYSIS

Tennessee Code Annotated section 8-20-101(a) provides in part that:
> Where any one (1) of the clerks and masters of the chancery courts . . . cannot properly and efficiently conduct the affairs and transact the business of such person's office by devoting such person's entire working time thereto, such person may employ such deputies and assistants as may be actually necessary to the proper conducting of such person's office . . . .

The statute then sets forth the proper procedure to be followed when the employment of deputies and assistants is requested by an office holder. The statutory language relevant to clerks and masters provides that:
> (3) The clerks and masters of the chancery courts, county trustees, county clerks and clerks of the probate courts, and registers of deeds may make application to the chancellor, or to one (1) of the chancellors (if there be more than one (1)), holding court in their county by sworn petition as above set forth, showing the necessity for a deputy or deputies or assistants, the number required and the salary each should be paid.[3]

---

[3] Tennessee Code Annotated section 8-20-101(a)(1) and (a)(2) provide procedural guidelines for clerks of the circuit, criminal, special courts, and sheriffs. Specifically, this

4

Tenn. Code Ann. § 8-20-101(a) (Supp. 2001). Additionally, subpart (c)(1) of section 8-20-101 states that:

> In the event the county official agrees with the number of deputies and assistants and the compensation and expenses related thereto, as set forth in the budget adopted by the county legislative body, the county executive and the county official involved may prepare a letter of agreement, using a form prepared by the comptroller of the treasury setting forth the fact that they have reached an understanding in this regard.

Tenn. Code Ann. § 8-20-101(c)(1) (Supp. 2001).

It is well-established that our primary purpose in construing statutes is to ascertain and give effect to the intention and purpose of the general assembly. See, e.g., Lipscomb v. Doe, 32 S.W.3d 840, 844 (Tenn. 2000); Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 802 (Tenn. 2000). Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language." Lipscomb, 32 S.W.3d at 844 (quoting Hawks v. City of Westmoreland, 960 S.W.2d 10, 16 (Tenn. 1997)). When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use. See State v. Nelson, 23 S.W.3d 270, 271 (Tenn. 2000).

The statutory scheme enacted by the general assembly for staffing and compensating the court clerk's office is clear. The office holder must demonstrate: (1) an inability to discharge the duties of a particular office by devoting his or her entire working time thereto;[4] and, (2) the office

---

portion of the statute provides that:

> (1) The clerks of the circuit, criminal, and special courts may make application to the judge, or any one (1) of the judges, of their respective courts, in term time or at chambers, by petition duly sworn to, setting forth the facts showing the necessity for a deputy or deputies or assistants, the number required and setting forth the salary that should be paid each;
> (2) The sheriff may in like manner make application to the judge of the circuit court in the sheriff's county, for deputies and assistants, showing the necessity therefor, the number required and the salary that should be paid each; provided, that in the counties where criminal courts are established, the sheriff may apply to the judge of such criminal court . . . .

Tenn. Code Ann. § 8-20-101(a) (Supp. 2001).

[4] In the sense used in Tennessee Code Annotated section 8-20-101, we construe "working time" to mean a reasonable number of hours. Thus, as the Court of Appeals stated in Jenkins v. Armstrong, 211 S.W.2d 908 (Tenn. Ct. App. 1947), public officials could not be held to

holder must petition the court and show the necessity for assistants, the number of assistants required, and the salary each should be paid. Tenn. Code Ann. § 8-20-101(a)(1), (3). Notwithstanding the clear language of the statute, the Court of Appeals interposed an extra standard to be met by the office holder before obtaining an increase in salaries for deputy clerks. It required, in addition to the language of Tennessee Code Annotated section 8-20-101(a), that Boarman demonstrate an inability to maintain her office by "utilizing the efforts of her staff as constituted and compensated at the time of the filing of her complaint." The statute does not so require. The requirement for authorization of deputies under Tennessee Code Annotated section 8-20-101(a) states only that an office holder must demonstrate an inability to "properly and efficiently conduct the affairs and transact the business of such person's office by devoting such person's entire working time thereto." Once the necessity of employing assistants is established, the appropriate trial court is empowered to determine the number of assistants needed and their salaries.

We agree with the Court of Appeals that the judiciary is brought into the budgetary fray only in limited circumstances. Indeed, generally county and state budgetary matters are better left to the various political branches and subdivisions. See Hunter v. Conner, 277 S.W. 71, 76 (Tenn. 1925), Hickman v. Wright, 210 S.W. 447, 450 (Tenn. 1919). However, with the enactment of Tennessee Code Annotated section 8-20-101, *et. seq.*, our legislature conferred authority upon the courts to determine the number and compensation of deputy and assistant trial court clerks, and others not relevant here. Moreover, Tennessee Code Annotated section 8-20-102 provides that once an application is filed with the court, "the court may hear proof either for or against the petition." The court then may allow the application by determining the number of deputies and assistants necessary and "may allow the salaries set out in the application or smaller salaries, *all as the facts justify.*" Tenn. Code Ann. § 8-20-102 (emphasis added).

In that respect, the appellant established that she maintains two offices in Washington County. The evidence established that the appellant serves three sitting judges, attends to the regular business of the office, and is directed to serve as Special Commissioner or Special Master when the need arises. All of these duties, and others relating thereto, are accomplished solely by Boarman or her staff. The appellant further testified it takes a chief deputy a minimum of five years to become proficient in the job due to the required breadth of knowledge, accuracy, and the ability to work with judges, attorneys, and the public. Boarman testified that two of the chief deputy clerks were considering leaving because their salaries were below that then prevailing for the nature and type of services required to be performed by them. From the evidence presented there can be little doubt that the office cannot properly and efficiently be maintained by Boarman alone devoting her entire working time thereto.

Evidence was further introduced regarding comparable salaries for county employees in all positions from as many as ten Tennessee counties closest to Washington County's population. The survey, requested by the defendant in 1997, compared salaries from fiscal year 1997-98 and reflected that the chief deputy clerks in Washington County were the lowest paid. The survey revealed that

the duty of an unreasonable working time beyond what was considered as usual office hours.

the chief deputy clerks of Washington County earned 16% less than the average compensation for chief deputies in similar counties. Dr. Benjamin Wayne Rockmore, the interim director of the Bureau of Business and Economic Research at East Tennessee State University, testified that a fair market rate for fiscal year 1998-99 for the chief deputy clerks of Washington County would be $32,378. The chancellor found the salary currently appropriated and paid to the deputy clerks and assistants to be below that prevailing for the nature and type of services required and performed, and less than that reasonably necessary to retain competent personnel against the enticements of the private sector. Based upon all of the evidence presented at trial, which also reflected that the office was operating at a deficit, the trial court found that the three chief deputy clerks were each entitled to an annual compensation for fiscal year 1998-99 in the amount of $27,700, and a county raise of $1,300 for fiscal year 1999-2000. Finally, the trial court held that the chief deputy clerks were entitled to a 2.2% annual raise, plus longevity pay, for fiscal year 2000-01. After a thorough review of the record in this case, we hold that the evidence preponderates in favor of the factual findings of the trial court supporting its judgment affixing salary increases for each of Washington County's chief deputy clerks.

### CONCLUSION

In sum, we hold that the Court of Appeals erred in construing Tennessee Code Annotated section 8-20-101 *et. seq.*, so as to require the appellant to demonstrate an inability to maintain her office with her staff as presently constituted and compensated. We further hold that the evidence does not preponderate against the trial court's judgment providing for the chief deputy clerk positions and the compensation to be paid each. Accordingly, that part of the Court of Appeals' decision which reverses the trial court's judgment approving the position of deputy clerk and increase in compensation is reversed, and the trial court is affirmed. We affirm the Court of Appeals' dismissal of defendant Jaynes counterclaim.

Costs of this appeal are taxed to appellee, George Jaynes.

_____
WILLIAM M. BARKER, JUSTICE

7