**William DORNING, Sheriff
of Lawrence County**

v.

**Ametra BAILEY, County Mayor of
Lawrence County, Tennessee.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 18, 2006 Session.

Jan. 3, 2007.

Permission to Appeal Denied by
Supreme Court May 21, 2007.

William M. Harris, Lawrenceburg, Tennessee, for the appellant, Ametra Bailey, County Mayor of Lawrence County, Tennessee.

John S. Colley, III, Columbia, Tennessee, for the appellee, William Dorning, Sheriff of Lawrence County, Tennessee.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

The Sheriff of Lawrence County filed this action against Lawrence County pursuant to Tenn.Code Ann. § 8–20–101 seeking additional personnel and funding, some of which the Sheriff had not requested through the budget process. The trial court ruled in the Sheriff's favor on most issues, and Lawrence County appeals the trial court's decisions to grant the Sheriff eight new deputies and across-the-board salary increases for all personnel, retroactive to the beginning of the fiscal year. We have concluded that the Sheriff is estopped pursuant to the County Budgeting Law of 1957 to petition the court for any relief not requested in the Sheriff's budget proposals submitted to the County during the formal budget process. Therefore, we modify the award for additional deputies, limiting the increase to two deputies, which is the number the Sheriff requested in his budget request proposals submitted to the County. We affirm the trial court's

decision to make the salary increases retroactive to the beginning of the fiscal year.

The Sheriff of Lawrence County, William Dorning, and Lawrence County have engaged in a series of legal skirmishes concerning the sufficiency of the County's appropriations for the operation of the Sheriff's Department over the past several years.[1] Although the previous litigation resolved issues for past budgets, that litigation did not resolve the ongoing feud between the Sheriff's Department and the County concerning the sufficiency of the County's appropriations for subsequent years. The matters in dispute pertain to the Sheriff's budget for the fiscal year 2005.[2]

On July 9, 2004, Sheriff Dorning submitted a budget proposal for the fiscal year beginning July 1, 2004, and ending June 30, 2005 (hereinafter the "fiscal year"),[3] requesting *inter alia* two additional deputies, two additional investigators, two additional secretaries, and across-the-board salary increases, in addition to a cost of living increase.[4] Following the budget review process, the County Commission adopted a budget for the fiscal year on September 28, 2004.

The budget approved by the County for the Sheriff's Department did not include the requested improvements; moreover, it provided for a reduction in the Sheriff's communication budget. Being dissatisfied with the budget approved by the County, the Sheriff filed this action pursuant to Tenn.Code Ann. § 8–20–101 seeking not only the budget enhancements requested in the budget requests submitted to the County, but also additional personnel and funding that had not been previously requested through the budget process. In the Petition filed on October 28, 2004, and the Amended Petition filed on November 1, 2004, the Sheriff requested:

a. Restoration of the communication budget to the level of the prior fiscal year;

b. Ten additional deputies (being eight more than requested in the budget proposal);

c. Base salary increases for administrative assistants, deputies, deputy sergeant and deputy lieutenants by 5% for each year in service with a satisfactory evaluation up to five years;

d. Salary increases for jail supervisors, deputy captain and chief deputy by 5% for each year in grade with a satisfactory evaluation up to five years;

1. In a previous legal engagement between the same parties, *Dorning v. Bailey*, No. M2004–02392–COA–R3–CV, 2006 WL 287377 (Tenn. Ct.App. Nov.16, 2005), this Court, *inter alia*, affirmed the trial court's decision to authorize the funding of two additional corrections officers; reversed the decision to authorize the funding of an additional administrative assistant; affirmed additional funding for salary increases; reversed the decision making the salary increases retroactive; and reversed the funding for the purchase of vehicles.

2. Although this is not the parties' first legal engagement, it will likely be their last as both Sheriff William Dorning and County Mayor Ametra Bailey were not re-elected in the August 2005 election to their respective offices.

3. The record does not explain why departmental budget proposals were submitted after the beginning of the fiscal year at issue. Neither party makes an issue of the fact the requests were presented after July 1, 2004, the beginning of the fiscal year, or that the County adopted the budget almost three full months after the fiscal year began.

4. In August of 2004 the Sheriff submitted an amended budget proposal; however, the amendments to the first proposal have no bearing on the matters at issue.

e. A cost-of-living increase of two and seven-tenths (2.7%) percent for all employees; and

f. All salary increases be retroactive to the beginning of the fiscal year.

The County filed an Answer opposing the Petitions. The matter was tried without a jury in March of 2005. As explained in two Memorandum Opinions and in the final order, the Circuit Court Judge approved the Sheriff's request for eight additional deputies, a five (5%) percent increase in all base salaries, and the salary increases were made retroactive to the beginning of the fiscal year, July 1, 2004. In addition thereto, the Sheriff's attorney fees were assessed against the County. The County appeals contending the trial court erred by awarding the Sheriff more deputies than the number he requested in the budgets he submitted to the County, awarding salary increases, and making the salary increases retroactive to the beginning of the fiscal year.[5]

### STANDARD OF REVIEW

■ The issues presented come to us following a bench trial wherein the trial court made findings of fact. The standard of review of a trial court's findings of fact is *de novo* and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn.Ct.App.2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn.Ct.App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596

(Tenn.Ct.App.1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn.1999). We also give great weight to a trial court's determinations of credibility of witnesses. In re *Estate of Walton*, 950 S.W.2d 956, 959 (Tenn.1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn.Ct.App. 2000).

Some of the issues presented require that we decide questions concerning the construction of Tenn.Code Ann. § 8-20-101, et. seq. Issues of statutory construction present questions of law. *Lipscomb v. Doe*, 32 S.W.3d 840, 843–44 (Tenn.2000) (citing *Wakefield v. Crawley*, 6 S.W.3d 442, 445 (Tenn.1999); *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 599 (Tenn. 1999)). Our review of questions of law and a trial court's construction of a statutory scheme is *de novo* without a presumption of correctness. *Id.; Lavin v. Jordon*, 16 S.W.3d 362, 364 (Tenn.2000), *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999).

### ANALYSIS

Three general issues are presented. The broader issue presented is whether the Sheriff may present budget requests to the court that were not presented to the County and subjected to budget committee reviews and public hearings as required by the County Budgeting Law of 1957. The second issue is whether the facts preponderate against the trial court's findings upon which the trial court based its decisions to increase certain appropriations for

---

**5.** The Sheriff appeals the trial court's denial of his request to amend the pleadings to ask for an additional seventeen deputy sheriffs.

We decline to discuss that issue because our estoppel ruling makes that issue moot.

the Sheriff's budget. The third issue is whether the award of salary increases can be retroactive to the beginning of the fiscal year. We will review the issues in turn.

## A.

### *The County Budgeting Law of 1957*

Several of the budget requests at issue were never presented to the County for review through the annual budget review process. The County contends the Sheriff is estopped to request funding that was not specified in the budget request proposals submitted to the County. The Sheriff contends there is no authority, statutory or otherwise, that limits him to the budget proposals submitted to the County, and that there were reasons—strategic, political, and otherwise—why he submitted a more modest budget proposal to the County than he now requests of the court. We have concluded the Sheriff's strategy was ill-advised and that the court's review is limited by the County Budgeting Law of 1957 to the Sheriff's budget proposals submitted in the budget process mandated.

Lawrence County follows the County Budgeting Law of 1957, Tenn.Code Ann. § 5–12–101, to establish the annual budget for the county and its departments.[6] In accordance with the County Budgeting Law of 1957, Lawrence County and its departments are to follow the general procedures set forth in the statute in the preparation, adoption, and execution of all budgets respecting all funds, activities, and agencies of Lawrence County government. Tenn.Code Ann. § 5–12–103. The general procedures require that the County establish "a county budget committee." Tenn.

Code Ann. § 5–12–104(a). The procedures also require that each department file with the director of accounts and budgets a "detailed estimate of its requirements for expenditures from the county's funds for the ensuing fiscal year, together with an estimate of any county revenues to be received" by such department. Tenn.Code Ann. § 5–12–106(d). Thereafter, the budget committee "shall review and adopt the annual budget." Tenn.Code Ann. § 5–12–107(a)(1).

The statutory scheme also requires that "the budget shall contain an itemized and classified plan of all proposed expenditures and estimated receipts for the ensuing fiscal year, and shall conform to the uniform classification of accounts established by the director of accounts and budgets." Tenn.Code Ann. § 5–12–107(a)(2). As part of the budget process, the budget committee is required to publish the proposed annual budget in the newspaper of general circulation in the county ten days prior to conducting a public hearing on the proposed budget. Following the public hearing, the budget committee shall make the final revision of the budget document and prepare it for presentation to the County Commission. Tenn.Code Ann. § 5–12–108(b). The County Commission may then alter or revise the proposed budget. Tenn.Code Ann. § 5–12–109(b). The appropriations made in the appropriation resolution by the County Commission shall constitute the limit to expenditures for the various purposes for the fiscal year covered by the resolution, and no expenditure shall be made or obligation created in excess of such limitation. Tenn.Code Ann. § 5–12–110(a).[7]

---

**6.** The General Assembly afforded each county the option of choosing the budget protocol it intends to follow. *See* Tenn.Code Ann. § 5–12–101 et seq. (2005) ("County Budgeting Law of 1957"); *see also* Tenn.Code Ann. § 5– 12–201 et seq. (2005) ("Local Option Budgeting Law of 1993").

**7.** The County Commission may subsequently amend the appropriations by resolution, sub-

If the Sheriff determines the County has failed to provide funding to the Sheriff's Department necessary "for the discharge of the statutorily mandated duties of the sheriff," the County Budgeting Law of 1957 affords the Sheriff the right to seek "a writ of mandamus to compel such appropriation."[8] Tenn.Code Ann. § 8–20–120. The Sheriff has exercised his right under Tenn.Code Ann. § 8–20–120 by filing this action; however, he seeks to take advantage of the benefits afforded him under the act without complying with its requirements. The County Budgeting Law of 1957, requires in pertinent part:

> Each of the other operating departments ... *shall file* with the director of accounts and budgets on or before April 1 of each year *a detailed estimate of its requirements* for expenditures from the county's funds for the ensuing fiscal year, together with an estimate of any county revenues to be received by such agency, office or department.(emphasis added)

Tenn.Code Ann. § 5–12–106(d).

Sheriff Dorning submitted his budget to the County and requested, *inter alia*, financing to hire two additional deputies. When the County declined to fund those positions, the Sheriff filed a petition with the Circuit Court requesting funding for ten additional deputies, eight more than requested in the budget proposal submitted to the county during the budget process. The Sheriff suggests this was

done for strategic and political reasons. We find no exception in the County Budgeting Law of 1957 for a department head to circumvent the budget process for strategic or political reasons. To the contrary, the County Budgeting Law of 1957 provides that the department head "shall file" a detailed estimate of its requirements for expenditures from the county's funds for the fiscal year, together with an estimate of any county revenues to be received by the department. Tenn.Code Ann. § 5–12–106(d). The mandatory component of the term "shall" is so well understood it requires no citation, and we find no meritorious reason to relieve the Sheriff of the mandate so clearly set forth in the County Budgeting Law of 1957. Moreover, if we were to adopt the Sheriff's argument that a department head should be able to petition a court for appropriations other than and in excess of that requested in the budget proposals submitted to the County, we would undermine the intent of the General Assembly which is clearly set forth in the County Budgeting Law of 1957. We are not afforded the latitude to ignore the intent of the General Assembly, *see John Doe, et al. v. Bd. of Prof. Resp. of the Supreme Court of Tenn.*, 104 S.W.3d 465, 469 (Tenn.2003), and neither is the Sheriff.

There are good public policy reasons underlying the enactment of the County Budgeting Law of 1957 and Lawrence County's previous decision to be bound by that law.[9] After analyzing the

---

ject to sufficient revenue to meet expenditures. Tenn.Code Ann. § 5–12–110(b).

**8.** "It is well settled that a writ of mandamus may properly be issued to compel a public official to perform a non-discretionary duty." *State ex rel. Ledbetter v. Duncan*, 702 S.W.2d 163, 165 (Tenn.1985).

**9.** Adopting a budget is essentially a political process intended to reflect the priorities of the

county. *Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003). The judiciary is only brought into the budget process "in limited circumstances." *Id.* Although the General Assembly prescribed the budgetary procedures counties are to follow, it left decisions concerning the priorities and amount of expenditures to the county. *See* Tenn. Code Ann. § 5–12–101 et seq. (2005) ("County Budgeting Law of 1957"); Tenn. Code Ann. § 5–12–201 et seq. (2005) ("Local Option Budgeting

issue, we hold that the Sheriff is estopped to pursue any claim for funding that was not presented to the County in a budget request proposal submitted to the County pursuant to the County Budgeting Law of 1957. We therefore reverse the trial court's ruling on the issue of estoppel and hold that the Sheriff is estopped to seek funding and personnel beyond that submitted in the budget request proposals. We modify the award of funding for the employment of additional deputies limiting the award to two additional deputies as submitted in the Sheriff's budget request proposal.

## B.

### *Preponderance of the Evidence*

■ The County contends the trial court erred by awarding the Sheriff funding to employ and train two additional deputies [10] and by awarding salary increases to all personnel employed by the Sheriff.

The trial court made findings to support its decisions that the Sheriff had established the necessity of employing two additional deputies and the need for granting an across-the-board salary increase of five percent for all personnel. We review the trial court's findings of fact *de novo* with a presumption of correctness, which is overcome only when the evidence preponderates against the trial court's findings. *Boarman v. Jaynes,* 109 S.W.3d 286, 290 (Tenn.2003).

The trial court found that the Sheriff had established the necessity of employing two additional deputies. The burden of proof was on the Sheriff to establish, pursuant to Tenn.Code Ann. § 8–20–101, an inability to properly and efficiently conduct the affairs of his office and transact the business of his office without additional personnel and funding. The record shows a 182% increase in the number of jail bookings over the last ten years, a 117% increase over the last five years in the number of incidents requiring a law enforcement response, and a 175% increase in the number of civil processes to be served by the Sheriff's Department. Officers had been required to work a substantial amount of overtime just to perform the basic statutorily required functions of the sheriff's department, and numerous civil and criminal warrants were going unserved for lack of manpower. These facts demonstrate that the Sheriff's department is in need of additional deputies. Finding the evidence does not preponderate against the trial court's finding that additional deputies are warranted by the work load, we affirm the award of funding for two additional deputies, being the number requested in the Sheriff's budget proposals submitted to the County.

The trial court also found it necessary to increase the salary of department personnel due to the fact the Sheriff had difficulty keeping experienced personnel on staff. The County concedes that the Sheriff requested the salary increases in the formal budget request he submitted, but argues

Law of 1993"). When the county denies a sheriff's request for additional funding, it is common practice for the sheriff to file an application under Tenn.Code Ann. § 8–20–101(a)(2); however, the determination of the value of the sheriff's services is particularly within the knowledge of the county. *Shanks v. Hawkins County,* 160 Tenn. 148, 22 S.W.2d 355, 356 (Tenn.1929).

**10.** The trial court originally awarded eight new deputies, but we have reduced that award to two deputies and will review the record to determine whether the preponderance of the evidence supports the award of two.

that the evidence preponderates against the award of increased salaries. Thirteen former employees of the Sheriff's Department testified that they left the Sheriff's Department for better paying jobs, and the Sheriff established that the inability to maintain an experienced staff hinders his ability to carry out his statutorily mandated duties. We, therefore, find that the evidence does not preponderate against the trial court's finding that the salary increases were necessary to enable the Sheriff to discharge his statutorily mandated duties.

### C.

### *Retroactive Award*

■ The County contends the trial court erred by awarding the salary increases retroactive to the beginning of the fiscal year, July 1, 2004. We find no error with the decision to make the award retroactive to the beginning of the fiscal year.

We have found two cases, *Dorning v. Bailey*, No. M2004–02392–COA–R3–CV, 2006 WL 287377 (Tenn.Ct.App. Feb.6, 2006) and *Roberts v. Lowe*, No. 03A01–9610–CC–00333, 1997 WL 189345 (Tenn. Ct.App. April 16, 1997), wherein this Court declined to apply a salary award retroactively. Those decisions were based on the Court's conclusion that the Circuit Court lacked statutory authorization to make an award under Tenn.Code Ann. § 8–20–120 retroactive. We respectfully disagree with those holdings having concluded that the Tennessee Supreme Court's ruling in *Boarman v. Jaynes* provides the authority to make an award retroactive to the begin-

ning of the fiscal year and therefore requires a different conclusion. *See Boarman*, 109 S.W.3d at 290.

The plaintiff in *Boarman* was Dianna Boarman, the Clerk and Master for the Washington County Chancery Court. She filed a petition against Washington County under the same statutory scheme as Sheriff Dorning, Tenn.Code Ann. § 8–20–101, et. seq. Like Sheriff Dorning, Ms. Boarman filed her petition months after the fiscal year had begun.[11] Ms. Boarman was seeking a pay increase for three chief deputy clerks.[12] The fiscal year at issue when the petition was filed was 1998–1999. As the case slowly progressed, she amended her petition to seek similar relief for the fiscal years 1999–2000 and 2000–2001. *Id.* at 288. Washington County defended the action contending the salary increases were not necessary to enable Ms. Boarman to properly and efficiently conduct the business of her office.

Specifically, Ms. Boarman was seeking an increase in wages for certain deputy clerks above the salary increases budgeted and approved for fiscal year 1998–1999 by the County Commissioners. The authorized annual salary for each was $25,688, and Ms. Boarman was asking that their salaries be increased to $30,460 for fiscal year 1998–1999. The trial court held that the three chief deputy clerks were each entitled to annual compensation of $27,700 for fiscal year 1998–1999 and made the award retroactive to July 1, which was three months prior to the filing of the petition. On appeal the Tennessee Supreme Court affirmed the ruling of the

---

**11.** The petition in *Boarman* was filed on September 30, 1998, three months after the beginning of the fiscal year. *Boarman*, 109 S.W.3d at 287. Sheriff Dorning's petition was filed on October 28, 2004, four months after the beginning of the fiscal year.

**12.** The original petition only pertained to fiscal year 1998–1999. Ms. Boarman later filed a second and third petition for fiscal years 1999–2000 and 2000–2001.

trial court,[13] explaining:

> It is well-established that our primary purpose in construing statutes is to ascertain and give effect to the intention and purpose of the general assembly. *See, e.g., Lipscomb v. Doe,* 32 S.W.3d 840, 844 (Tenn.2000); *Gleaves v. Checker Cab Transit Corp.,* 15 S.W.3d 799, 802 (Tenn.2000). "Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language." *Lipscomb,* 32 S.W.3d at 844 (quoting *Hawks v. City of Westmoreland,* 960 S.W.2d 10, 16 (Tenn.1997)). When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use. *See State v. Nelson,* 23 S.W.3d 270, 271 (Tenn.2000).
>
> . . . .
>
> We agree with the Court of Appeals that the judiciary is brought into the budgetary fray only in limited circumstances. Indeed, generally county and state budgetary matters are better left to the various political branches and subdivisions. *See Hunter v. Conner,* 152 Tenn. 258, 277 S.W. 71, 76 (1925), *Hickman v. Wright,* 141 Tenn. 412, 210 S.W. 447, 450 (1919). However, with the enactment of Tennessee Code Annotated section 8–20–101, et. seq., our legislature conferred authority upon the courts to determine the number and compensation of deputy and assistant trial court clerks, and others not relevant here. Moreover, Tennessee Code Annotated section 8–20–102 provides that once an application is filed with the court, "the court may hear proof either for or against the petition." The court then may allow the application by determining the number of deputies and assistants necessary and "may allow the salaries set out in the application or smaller salaries, all as the facts justify." Tenn. Code Ann. § 8–20–102 (emphasis added).
>
> Based upon all of the evidence presented at trial, which also reflected that the office was operating at a deficit, the trial court found that the three chief deputy clerks were each entitled to an annual compensation for fiscal year 1998–99 in the amount of $27,700, and a county raise of $1,300 for fiscal year 1999–2000. Finally, the trial court held that the chief deputy clerks were entitled to a 2.2% annual raise, plus longevity pay, for fiscal year 2000–01. After a thorough review of the record in this case, we hold that the evidence preponderates in favor of the factual findings of the trial court supporting its judgment affixing salary increases for each of Washington County's chief deputy clerks.

*Boarman,* 109 S.W.3d at 291–92.[14]

The petition in *Boarman* was filed on September 30, 1998, three months after

---

**13.** On appeal, the Court of Appeals reversed the trial court's decision to increase the salaries of the three chief deputy clerks and affirmed other parts of the trial court's rulings. The Supreme Court reversed that part of the decision of the Court of Appeals which reversed the trial court's judgment and approved the position of deputy clerk and increases in compensation for the respective fiscal years.

**14.** The trial court in *Boarman* held that the three chief deputy clerks were each entitled to annual compensation for fiscal year 1998–99 of $27,700; that they were entitled to a county raise of $1,300 for fiscal year 1999–2000; and they were entitled to a 2.2% annual raise, plus longevity pay, for fiscal year 2000–01. *Id.* at 292. After finding that the evidence preponderated in favor of the findings supporting the trial court's "judgment affixing salary increases for each of Washington County's chief deputy clerks" the Supreme

the beginning of the 1998–99 fiscal year. *Boarman,* 109 S.W.3d at 287. Sheriff Dorning's petition was filed October 28, 2004, four months after the beginning of the fiscal year. The statutory scheme at issue in *Boarman* is the same at issue here, Tenn.Code Ann. § 8–20–101, et seq. The Supreme Court in *Boarman* affirmed the retroactive award to the beginning of the fiscal year, which was months prior to the filing of the petition, and we see no reason to treat the salary increases for the Sheriff's personnel differently. We, therefore, affirm the retroactive award of salary increases to the beginning of the fiscal year, July 1, 2004.

The judgment of the trial court is modified and affirmed, and this matter is remanded with costs of appeal assessed against the Appellant, Lawrence County, Tennessee.

Court affirmed the judgment of the trial court, thereby awarding the pay raises retroactively to the beginning of each respective fiscal year. *Id.*