# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 20, 2010 Session

## STATE OF TENNESSEE v. PATRICK M. LONIE

**Direct Appeal from the Circuit Court for Hickman County**
**No. 09-5018-CR      Timothy L. Easter, Judge**

**No. M2009-01894-CCA-R3-CD - Filed September 9, 2010**

The defendant, Patrick M. Lonie, was charged by presentment with twelve counts of especially aggravated sexual exploitation of a minor and ten counts of aggravated sexual battery. In an open plea, he pled guilty to four counts of especially aggravated sexual exploitation of a minor. Following a sentencing hearing, he was sentenced as a Range I offender to one term of eleven years and three terms of ten years, with two of the sentences to be served consecutively, for an effective sentence of twenty-one years. On appeal, he argues that the trial court erred in its application of Tennessee Code Annotated section 40-35-115 to the Tennessee Protection of Children Against Sexual Exploitation Act of 1990, Tenn. Code Ann. § 39-17-1001, *et seq.*, and that, as a result, he should not have received consecutive sentences. Following our review, we affirm the judgments of the trial court and remand for entry of corrected judgments to reflect the conviction offenses as *especially* aggravated sexual exploitation of a minor.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded for Entry of Corrected Judgments**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Douglas Thompson Bates, IV, Centerville, Tennessee, for the appellant, Patrick M. Lonie.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Senior Counsel; Kim R. Helper, District Attorney General; and Michael J. Fahey, II, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

At the sentencing hearing, Scott Smith testified that he was a detective with the Hickman County Sheriff's Department. He said that the investigation of the defendant began when the mother of two young girls reported to the sheriff's department that she believed "there was some inappropriate behavior going on with her two daughters at the Lonie residence." He said that after the mother and her two daughters were interviewed, officers obtained a search warrant for the defendant's residence. At that location, officers seized three computer hard drives, which then were sent to the Tennessee Bureau of Investigation laboratory for analysis. Smith said that the CD, onto which the contents of the hard drives had been loaded, "[d]epicted photographs and videos of two juvenile victims in states of undress, bondage, things of that nature." He said that the mother of the two girls whose pictures were on the disk identified them. Additionally, he said, as to the CD, that "[t]here's some pornographic films on there. They appear to be young people, but to discern what exactly their ages, I couldn't do it." Smith said that items of clothing found in the defendant's garage consisted of "Miley Cyrus T-shirts and novelty T-shirts[.]" Also, in the garage, officers found written instructions as he described:

> It appeared to be instructions to a type of game I guess. I . . . believe one of the names of the game was called Ambidextrous and it instructed whoever was participating in this game to bind them self [sic] somehow in this chair and then they would have to unbind themselves and obtain a key which opened a lock box which contained gifts, presents I guess, money.

He said that some money on a pair of panties was found in the garage, as well as a lock box, which contained gifts.

Smith described the way that the garage was arranged:

> If you're facing the garage, the tan recliner would have been in the right bay of the garage. Inside this right bay . . . of the garage was a makeshift room made out of plywood and cinder blocks. Inside this makeshift room was several lights, temporary lighting hanging from the ceiling and placed on . . . the walls, and the tan recliner was located in this makeshift room underneath chains and some pulleys and . . . I guess cuffs . . . binding type cuffs. They were sweat bands. They were used . . . to bind the person in a chair.

He said that "homemade panties," found in the garage, "were fashioned so sections on the hip on both sides were tied with a ribbon. So if one of these ribbons was untied, the panties no longer would stay up on the hips of the . . . person wearing them. They would fall to the ground."

On cross-examination, Smith said that, as the search warrant was being executed, the defendant told officers where certain items, later tagged as evidence, were located. He said that the defendant had presented no problems since his arrest.

The mother of the two girls in the photographs testified that they were, respectively, ten and eleven years old. She said that she had known the defendant since she was five years old. When she was young, she and her sister went "all the time" to the defendant's house where he lived with his family. She said that, when she was young, her family moved around a lot, and the defendant "would always find out where we were going and continue to come and get us and take up places and spend – his wife and my mom were pretty close." She said that, when her oldest daughter was four, the defendant would take her to McDonald's and then bring her home, "it started out with little trips like that[.]" Explaining her trust in the defendant, she said that she was "very particular about who her children were around":

> I'm saying that I was hurt as a child by my father. I thought that [the defendant] was one of the few men in this world that I trusted that didn't hurt me as a baby and then he does this to my kids. If you can't trust a person you were around as a kid that you thought had treated you great, who can you trust?

She described the visits her children made to the defendant's house in 2006:

> [T]hey were going over there to play and stuff and sometimes they would all three go at the same time and just spend the day and come home. They didn't always stay the night, but there was times when they did go stay the night.

She explained how the defendant had told her of the "treasure hunts" her daughters participated in:

> [The defendant] said [the defendant's wife] had had this great idea. He said we've set and made clues for the girls and we've been working on this all . . . weekend, and if they follow the clues then they'll get, you know prizes; candy and – it was mainly candy just like twizzlers, different little candies that they liked.

She said that the defendant took her daughters shopping for Miley Cyrus T-shirts and "every now and then there would be something like that in their treasure."

She explained how she had learned of the activities occurring while her daughters

were at the defendant's house, and she heard one of her daughters remark that there was an item in the bag from the treasure hunt that was supposed to remain at the defendant's house:

> Talked to [the defendant], we finished making arrangements to go to the pool that weekend together because we were all supposed to get together and go to the pool that weekend; that Saturday. And [the defendant] left, I went in the kitchen – bathroom and I was fixing J.'s hair. I was brushing her hair and this – it just hit me again, and I was like, J., what was that you gave [the defendant] and told him that he's supposed to keep at his house? And she said, those were the panties for the treasure hunt. And I could have – everything spun, everything went black, I couldn't breathe. I said, J., why do you need panties for a treasure hunt? And she said, Mama, she said, [the defendant] puts ties on them – on either side. Oh, and I said, those don't look like . . . panties to me. And she said, well, they tie on either side and he puts a key on there and whenever I get the key then I can unlock my treasure. And I said, J., when you untie the key doesn't your underwear fall off? And she said, yeah, but he's not in there, he can't see me. I said, what else are you wearing? And she said a T-shirt. And I said, J., honey, I said, don't you know that's not right? And she said, he can't see me, he's on the other side of the wall. And she explained to me that they were doing the treasure hunt in the garage and she was tied up and . . . her feet and hands are tied and she has to get untied and then untie [sic] to get the key to be able to open the treasure.

She then went to her ex-husband's place of employment, told him what she had learned, and they picked up their daughters from school and went to the sheriff's department. She said that the girls in the majority of the photographs from the defendant's computer were her two daughters.

## ANALYSIS

On appeal, the defendant argues that the trial court erred in ordering that his sentences be served consecutively. The State disagrees, asserting that the trial court properly ordered consecutive sentencing.

As we have set out, the defendant entered open pleas to four counts of especially aggravated sexual exploitation of a minor:

> (a) It is unlawful for a person to knowingly promote, employ, use, assist, transport or permit a minor to participate in the performance of, or in the production of, acts or material that includes the minor engaging in:

-4-

        (1) Sexual activity; or

        (2) Simulated sexual activity that is patently offensive.

Tenn. Code Ann. § 39-17-1005(a).

        Tennessee Code Annotated section 39-17-1002, the definitions section of the Tennessee Protection of Children Against Sexual Exploitation Act, defines "sexual activity" as including:

        (D) Sadomasochistic abuse, including flagellation, torture, physical restraint, domination or subordination by or upon a person for the purpose of sexual gratification of any person[.]

Id. § 39-17-1002(8)(D).

        Tennessee Code Annotated section 40-35-115(b)(5) was relied upon by the trial court in ordering that the defendant's sentences be served consecutively:

        (b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

        . . . .

        (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

        As the defendant correctly points out, this section does not define the term "statutory offenses involving sexual abuse of a minor." Relying on the holding of this court in State v. Wade McKinley Staggs, Sr., No. M2007-01228-CCA-R3-CD, 2009 WL 363323 (Tenn. Crim. App. Feb. 13, 2009), the defendant argues that "sexual activity" and "sexual abuse" are not the same and that, as a result, the trial court erred in imposing consecutive sentencing.

        In Staggs, the defendant was convicted of fifty-nine counts of sexual exploitation of a minor, and the trial court ordered that certain of the counts be served consecutively. Concluding that "sexual activity" and "sexual abuse" were not the same, this court concluded

that the trial court erred in ordering consecutive sentencing:

> Our review reveals no previous case in which this Court has considered the application of section 40-35-115(b)(5) to section 39-17-1003. "When the plain language of the statute is clear and unambiguous, we apply the plain language in its normal and accepted use." Boarman v. Jaynes, 109 S.W.3d 286, 291 (Tenn. 2003) (citing State v. Nelson, 23 S.W.3d 270, 271 (Tenn. 2000)). The section at issue requires that a defendant be convicted of "offenses involving sexual abuse of a minor." The noun "abuse," in relevant part, means "misuse" or "physical maltreatment." THE AMERICAN HERITAGE DICTIONARY 4 (4th ed. 2001). In our view, the Defendant was indeed convicted of an offense "involving" sexual abuse of a minor.
>
> The remainder of the section focuses on "the relationship between the defendant and victim or victims," as well as "the defendant's sexual activity" and "the nature and scope of the sexual acts." We conclude that section 40-35-115(b)(5) was intended by the legislature to apply to defendants found to have had sexual contact or sexual relationships with minors. We conclude that the trial court erred by applying this section to the Defendant. Accordingly, we conclude that the trial court erred by ordering consecutive sentences.

Id. at *18.

However, in State of Tennessee v. John Jason Burda, No. M2006-02523-CCA-R3-CD, 2009 WL 1181349, at *15-16 (Tenn. Crim. App. May 4, 2009), perm. to appeal denied (Tenn. Nov. 23, 2009), this court reached a different conclusion as to whether, pursuant to Tenn. Code Ann. § 40-35-115(b)(5), the term "sexual abuse of a minor," allowing consecutive sentencing, encompasses sexual exploitation of a minor, Tenn. Code Ann. § 39-17-1005.

The court noted that, although sexual abuse of a child was not defined in the Tennessee Protection of Children Against Sexual Exploitation Act, the definition of child sexual abuse under Tennessee Code Annotated section 37-1-602(a)(3)(B), applicable in juvenile courts, specifically included especially aggravated sexual exploitation of a minor within the definition of "child sexual abuse":

> "'Child sexual abuse' also means the commission of any act involving the unlawful sexual abuse, molestation, fondling or carnal knowledge of a child

under thirteen (13) years of age that on or after November 1, 1989, constituted the criminal offense of:

. . . .

(v) Especially aggravated sexual exploitation of a minor under § 39-17-1005."

Burda, 2009 WL 1181349, at *16 (quoting Tenn. Code Ann. § 37-1-602(a)(3)(B)(v)).

We note that, in cases previous to either Staggs or Burda, this court held that Tennessee Code Annotated section 40-35-115(b)(5) was applicable in ordering that sentences for sexual exploitation of a minor could be served consecutively. See State v. Ricky Grover Aaron, No. M2002-02288-CCA-R3-CD, 2004 WL 1533825, at *20 (Tenn. Crim. App. July 8, 2004), perm. to appeal denied (Tenn. May 2, 2005) (trial court ordered state conviction for especially aggravated sexual exploitation of a minor to be served consecutively to federal conviction for possession of material involving sexual exploitation of a minor, because both involved sexual abuse of a minor; this court affirmed); State v. Dennis Harry Johnson, No. M2000-03047-CCA-R3-CD, 2001 WL 1218601, at *1 (Tenn. Crim. App. Oct. 12, 2001) (two counts of sexual exploitation of a minor to be served consecutively). Although it does not appear that, in these cases, the claim was made by the defendant that "sexual exploitation" was not within the definition of "sexual abuse," this court concluded Tennessee Code Annotated section 40-35-115(b)(5) to be applicable in affirming consecutive sentencing.

We conclude that Burda is the better reasoned case. As it notes, and we previously have set out, Tennessee Code Annotated section 37-1-602(a)(3), applicable in juvenile courts, specifically includes especially aggravated sexual exploitation of a minor, as proscribed by Tennessee Code Annotated section 39-17-1005, within the definition of "child sexual abuse." Thus, if we accept the defendant's argument, the result would be that while in juvenile courts especially aggravated sexual exploitation of a minor is child sexual abuse, in cases prosecuted in criminal courts it is not. We cannot conclude that this is a common-sense reading of the applicable statutes and, accordingly, affirm the judgments of the trial court. However, we note that the judgments of convictions list the convicted offenses as aggravated sexual exploitation of a minor, rather than especially aggravated sexual exploitation of a minor, to which the defendant pled guilty. Accordingly, we remand for entry of corrected judgments.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court but remand for entry of corrected judgments.

_____
ALAN E. GLENN, JUDGE