IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 2, 2020

## ANTONIO DAVIS v. RIVERGATE MUFFLER AND AUTO REPAIR ET AL.

Appeal from the Circuit Court for Davidson County
No. 19C2079            Kelvin D. Jones, Judge
_____

### No. M2019-02243-COA-R3-CV
_____

The owner of a vehicle seeks to recover for damage done to his vehicle while being repaired by the defendant auto repair shop. The defendant denied liability and asserted a counterclaim for the work it performed at the owner's request. The circuit court dismissed the owner's claims and awarded the defendant a judgment of $1,600. The owner appeals. We affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., PJ., M.S., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Antonio Lamont Davis, Goodlettsville, Tennessee, Pro Se.

James M. Burd, Louisville, Kentucky, for the appellees, Rivergate Muffler & Auto Repair, and Paul Speck.

### MEMORANDUM OPINION[1]

The plaintiff, Antonio Davis, is the owner of a 2009 Chrysler 300 with approximately 187,000 miles. These legal proceedings commenced on July 2, 2019, when Mr. Davis filed a civil warrant in the general sessions court, requesting $8,083.08 from Rivergate Muffler & Auto Repair ("Rivergate") for damage done to his vehicle while being serviced by Rivergate. Rivergate denied causing any damage and filed a counterclaim for

_____

[1] Rule 10 of the Rules of the Court of Appeals states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

$2,065.07 for repairs performed plus storage fees. Following a trial, the general sessions court dismissed Mr. Davis' claims and entered judgment in favor of Rivergate in the amount of $2,450.00. Mr. Davis appealed the judgment to the circuit court.

Following a bench trial on October 31, 2019, the circuit court dismissed Mr. Davis' claims and awarded Rivergate a judgment on its counterclaim in the amount of $1,600.[2] Mr. Davis then filed a pleading titled "Motion Hearing," which the court construed as one to alter or amend the judgment and denied, holding that Mr. Davis "failed to present a legally sufficient basis to alter or amend this court's judgment" and that his arguments were "inconsistent with the evidence presented at trial." Mr. Davis appeals.

Because this was a bench trial, "our review of the trial court's findings of fact is de novo upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise." *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006); *see* Tenn. R. App. P. 13(d). Review of the trial court's conclusions of law is de novo with no presumption of correctness afforded to the trial court's decision. *Kaplan*, 188 S.W.3d at 635. "Where the trial court does not make findings of fact, there is no presumption of correctness and we 'must conduct our own independent review of the record to determine where the preponderance of the evidence lies.'" *Dorning v. Bailey*, 223 S.W.3d 269, 272 (Tenn. Ct. App. 2007) (quoting *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999)). Because the trial court's judgment does not contain findings of fact, we will conduct an independent review of the evidence to determine whether Mr. Davis and Rivergate each proved their case by a preponderance of the evidence, and, subsequently, whether the trial court's judgment is supported by the evidence.[3]

## ANALYSIS

The genesis of this dispute occurred once Mr. Davis realized that the oil pan in his vehicle had been significantly damaged, at which time Mr. Davis contacted Rivergate requesting it be towed to Rivergate's shop so its mechanics could replace the damaged oil pan and make other necessary repairs. Mr. Davis states that he informed Rivergate to not attempt to start the engine until the oil pan had been replaced and oil added. He further claims that Rivergate disregarded his instruction by trying to start the engine before

---

[2] The circuit court also informed Mr. Davis that he could retrieve his vehicle when the judgment was paid in full; however, in the event that Mr. Davis did not pay the judgment in full by November 8, 2019, the trial court authorized Rivergate to begin charging storage fees in the amount of $25.00 per day.

[3] The record before this court contains a statement of the evidence prepared by the trial court after it determined that neither party's statement of the evidence conveyed an accurate or complete account of the hearing. *See Marra v. Bank of New York*, 310 S.W.3d 329, 336 (Tenn. Ct. App. 2009) ("[I]n order to be a useful substitute for a trial transcript, the statement must "convey a fair, accurate, and complete account of what transpired [in the trial court] with respect to those issues that are the bases of appeal." (quoting Tenn. R. App. P. 24(c)).

replacing the oil pan and filling the engine with oil, which action caused significant damage to the engine.

Three witnesses testified on behalf of Rivergate at trial: Paul Speck, the owner, Mike Lilly, the manager, and Marco Andrade, the mechanic who worked on the vehicle. Mr. Andrade testified that he did not attempt to start the engine until after he had replaced the oil pan, installed a new oil filter, and filled the engine with oil. Mr. Andrade further testified that after making the repairs, he attempted to start the vehicle, at which time he determined that the engine had "locked up." Mr. Speck and Mr. Lilly also testified that no one at Rivergate attempted to start the vehicle until after it was serviced.

Mr. Lilly then informed Mr. Davis of the situation and offered to make an additional attempt to start the vehicle, which Mr. Davis approved. After Mr. Lilly and Mr. Andrade unsuccessfully attempted to start the vehicle a second time, Mr. Lilly informed Mr. Davis of the situation and offered to prepare an estimate for Rivergate to replace the engine; Mr. Davis declined, and the parties had no further communication until this action was commenced.

As did the trial court, we find that Mr. Davis failed to prove by a preponderance of the evidence that Rivergate caused the damage at issue. Simply put, there is a giant hole in his case. Mr. Davis presented factual testimony concerning his initial discussions with Rivergate—when he asked Rivergate to make repairs to the engine—and when he spoke with Mr. Lilly after the repairs had been made and it was determined that the engine had "locked up." However, Mr. Davis presented no competent evidence concerning the dispositive facts, that being, whether Rivergate caused the damage to the engine. Rather, Mr. Davis testified as to what he believed occurred in the repair shop, which is mere speculation and not competent evidence. More importantly, Mr. Andrade presented competent first-hand testimony concerning what did and did not occur in the repair shop, which is undisputed.

Moreover, Mr. Andrade, who was allowed to testify as a mechanical expert pursuant to Rule 702 of the Tennessee Rules of Evidence,[4] determined that Mr. Davis caused the engine to "lock up" when he started the engine multiple times after the oil pan had been damaged, which was before it was towed to Rivergate. Consistent with Mr. Andrade's determination, Mr. Davis admitted that he attempted to start the engine several times after realizing the oil pan had been damaged. Significantly, Mr. Davis did not provide a qualifying expert to rebut Mr. Andrade's determination that Mr. Davis caused the engine to "lock up," not Rivergate. Nevertheless, Mr. Davis countered by contending that "the charge for the alignment [listed on the invoice created by Rivergate] proved [that]

---

[4] Rule 702 states: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise."

Rivergate caused his engine to lock up" because, if an alignment was done, then Rivergate would have had to start the vehicle.[5] The trial court found this argument unpersuasive, and we agree. Mr. Speck, Mr. Lilly, and Mr. Andrade all testified that Rivergate did not perform an alignment because the engine was "locked up"; and that, if Mr. Davis had come to Rivergate to retrieve his vehicle and paid the invoice, the charge would have been removed.

Having determined that the evidence preponderates in favor of the trial court's finding that Mr. Davis failed to prove that any act or omission by Rivergate damaged the vehicle, we affirm the trial court's ruling on Mr. Davis' claim.

We now turn our attention to Rivergate's counterclaim, in which it asserted that Mr. Davis' vehicle was towed to Rivergate on May 20, 2019, for repairs to the oil pan and undercarriage of the vehicle; and that Rivergate provided Mr. Davis with a description of the work to be performed and an estimate of the cost prior to performing the work. Once Mr. Davis approved the work plan, Rivergate obtained parts for the repair and performed the work, but, despite Rivergate performing the work as specified and agreed to, Mr. Davis has not paid Rivergate for the repairs performed.

The evidence shows, and Mr. Davis does not dispute, that Rivergate serviced the vehicle. Mr. Andrade testified that he repaired the vehicle by replacing the oil pan, subframe, and lower control arms, installing the oil filter and adding oil. Further, after it was determined that Mr. Davis' engine was "locked up," Mr. Andrade testified that, after Rivergate received Mr. Davis' permission to attempt to "unlock" the engine, he "removed the oil pan and attempted to move the pistons . . . replaced the oil pan and filled the engine with oil again." Exhibit 9, which was admitted into evidence, provided an itemized list of the parts provided and the repairs made by Rivergate to Mr. Davis' vehicle, all of which Mr. Davis acknowledged that he approved. Mr. Davis did not provide any evidence of the actual cost of repairs; therefore, we must accept Rivergate's assessment of the charges for the services rendered.

Mr. Davis, however, challenges the cost of the parts used to repair his vehicle. He testified that, after discovering Rivergate obtained parts from "LKQ,"[6] he looked up the cost of obtaining the parts from an LKQ pick-a-part lot. He testified that the purchase prices for the parts were less than Rivergate billed him for and that the parts did not have a warranty or insurance certification. However, Rivergate's witnesses established that it obtained "Grade A" parts from LKQ, which is distinct from LKQ's "Pick-A-Part lots," and that the used parts it buys are in excellent condition, are insurance certified, and come with a warranty.

---

[5] Aside from the invoice, there is no other evidence that an alignment was performed and Mr. Lilly, Mr. Andrade, and Mr. Speck testified that the invoice was incorrect because an alignment was not done.

[6] He made this discovery by seeing a LKQ tag on the subframe of his vehicle.

- 4 -

Mr. Speck and Mr. Lilly testified as to the source, quality, and price of the parts installed in Mr. Davis' vehicle. The invoice for the repairs, which was admitted into evidence as Exhibit 9 and contains the "tech report" written by Mr. Speck, states that Mr. Davis' vehicle needed a subframe; that Mr. Davis "hit something in the road" and "broke the oil pan"; that the technician "was told [that the] vehicle ran"; that the parts had been replaced; and that when attempting to start the vehicle, the technician "found [the] motor locked up." The invoice also contains an itemized list of the parts purchased, including the quantity, cost, and description of each part. Although the parts purchased were described as "new" on the invoice, Mr. Speck and Mr. Lilly testified that this description meant the parts were new to Mr. Davis' vehicle and that Rivergate "routinely uses used parts to repair vehicles." Mr. Lilly also testified that if the parts were new, then the cost for repairs to Mr. Davis' vehicle would have been higher.

Rivergate sought to recover $2,065.07 for repairs performed and storage fees of $25.00 per day. In its ruling, the trial court deducted the cost of alignment because it was stipulated that this service had not been performed. The court also ruled Rivergate could not recover any storage fees prior to November 8, 2019, during which time Mr. Davis could retrieve his vehicle without incurring storage fees.

We have determined the evidence preponderates in favor of the trial court's ruling that Rivergate was entitled to recover $1,600.00 for services rendered to Mr. Davis' vehicle. Accordingly, we affirm the trial court's ruling on Rivergate's counterclaim.

## IN CONCLUSION

For the foregoing reasons, we affirm the trial court in all respects. Costs of this appeal are taxed to Appellant, Antonio Davis.

_____
FRANK G. CLEMENT, JR., JUDGE