IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 28, 2018

**STATE OF TENNESSEE v. STEVEN SWINFORD**

**Appeal from the Criminal Court for McMinn County**
**No. 16-CR-262     Andrew M. Freiberg, Judge**

———————————————————

**No. E2017-01164-CCA-R3-CD**

———————————————————

The defendant, Steven Swinford, pled guilty to vandalism of property in the amount of $1,000 or more but less than $10,000 (Count 1), vandalism of property in the amount of $10,000 to $60,000 (Count 2), burglary (Count 3), and vandalism of property in the amount of $60,000 to $250,000 (Count 4), for which he received an effective twelve-year sentence. The defendant now appeals the twelve-year sentence imposed by the trial court for his conviction in Count 4, arguing it to be excessive. Separately, the State challenges the trial court's application of the criminal saving's statute of Tennessee Code Annotated section 39-11-112 to the defendant's vandalism conviction of Count 1 through the amended version of the theft statute of Tennessee Code Annotated section 39-14-105. Following our review, we affirm the trial court's application of the criminal saving's statute to Count 1 and the trial court's sentencing in Count 4, but remand the case to the trial court for a hearing on the matter of sentencing as to Counts 1, 2, and 3.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part; Case Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT L. HOLLOWAY, JR., JJ., joined.

Judith Hamilton, Athens, Tennessee, for the appellant, Steven William Swinford.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Emily Petro, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# FACTS

Over the course of two days in February 2016, the sixteen-year-old defendant vandalized numerous vehicles across McMinn County, Tennessee. The defendant was transferred to criminal court where he entered open guilty pleas for his crimes and agreed to be sentenced subsequently by the trial court. Specifically, on December 5, 2016, the defendant pled guilty to three counts of vandalism and one count of burglary. Tenn. Code Ann. § 39-14-402, -408. At the guilty plea hearing, the State read the following facts surrounding the defendant's criminal activity into the record:

> Your Honor, beginning with Count One of the indictment: On February 20th of 2016, officers with the Etowah Police Department responded to a vandalism call on Willard Memorial Highway. When they arrived, officers came into contact with a Rovanda Davis who stated that someone had broken the windows out of her van. She was an employee at the Aztec in Etowah and stated that young white males approximately 16 years of age had come into her store. One of them had tried to buy a can of tobacco. And when they didn't have -- neither could produce and (sic) ID, she sent them away. And she further stated that she was closing the store that night, and after she had closed the store, she heard a loud noise outside, like someone was beating on the walls of the store. She went outside and found the passenger side window of her car and the sliding back window of her car had been broken out, apparently with a brick that was nearby. And that there was a large dent under the window in [the] sliding glass door of her car as well, that all of the windows on the van that were remaining had been scratched with what appeared to be a piece of brick. And while she didn't see the actual vandalism take place, shortly before that had happened, she had seen two juvenile males that appeared to be the same two from the store that were in the vicinity of where her car was at the Aztec.
>
> . . .
>
> The out-of-pocket damage -- the damage was several thousand dollars. The out-of-pocket damage that [Ms. Davis] had to pay was $1,000.
>
> . . .

- 2 -

Count Two, Your Honor: On February 21st of 2016, deputies with the McMinn County Sheriff's Office responded to a call regarding a vandalism to a tractor belonging to the Etowah Utilities Board that was parked about a quarter mile past the Wesleyan Church on County Road 607 coming from Highway 30 in McMinn County. The caller, Marty Aderhold, an employee of the Utilities Board, stated that there were glass and lights busted out of the tractor and it appeared to be, by vision, almost entirely destroyed. It was taken for an estimate of the repairs to the Ritchie Tractor Company, showing a total of $21,427 in damage to the tractor.

. . .

The total amount that [Etowah Utilities Board] paid out of pocket was $1200.

. . .

Okay. And then Count Three and Count Four arise out of the same incident where on the 21st day of February of 2016 detectives with the McMinn County Sheriff's Office received a phone call from Scott Cass, who's the owner at East Tennessee Auto Outlet, regarding damage to several vehicles on his car lot. And he asked if deputies could be en route.

When the detective arrived, he observed numerous vehicles on the car lot that had [been] vandalized and also a building on the lot that had been broken into, which had several antique vehicles that were inside that had also been, essentially, completely destroyed. There was video surveillance at the property that Mr. Cass supplied to the detectives where upon reviewing the surveillance from the night prior, you can see two white, apparently, juveniles that are walking around the car lot, essentially, busting out windows, kicking vehicles, taking tires and rolling them down across the parking lot, and using some sort of an object to strike the windows of vehicles, and the sides of vehicles as well.

This surveillance footage was put up on Facebook and used through multiple law enforcement channels. Later identified where (sic) [the defendant] and [co-defendant] as the two individuals in the video. Detective Witt reached out to the guardians for [the defendant] and [co-defendant]. And [the defendant] was interviewed with his guardian present

- 3 -

at the McMinn County Sheriff's Office, advised of his *Miranda* Rights, and agreed to speak further.

At that time, [the defendant] did admit to his participation in the vandalism at the East Tennessee Auto Outlet. Knocking out windows, knocking off mirrors, dumping motor oil on the cars, using a pole with [his co-defendant] to destroy cars, and that it is the East Tennessee Auto Outlet on Highway 30, that it was done. [The defendant] and [co-defendant] were pretty much just bored. But they had also gone into the shop on the car lot, found older cars in the building, and messed up on them. And he identified himself on surveillance video.

[The defendant] was asked also about the Etowah tractor also identified as an incident that happened on the 20th of February, but it was not at the same time as the car lot and that he and [his co-defendant] had busted out windows, and essentially tore up the tractor that was on County Road 607. [The defendant] recalled that it was a green tractor, which is consistent with the tractor that was called in by Mr[.] Aderhold with the Utilities Board.

And then finally [the defendant] was asked about Ms. Davis's vehicle that was identified as an incident that occurred on the 19th where [the defendant] and [his co-defendant] had gone to the gas station in Etowah. That they busted a van window out, and that one of the two individuals -- I don't believe [the defendant] identified it as himself. But that one of the two individuals were (sic) trying to get dip and it didn't work, so they got mad and busted the van windows. And this all did occur in McMinn County, Tennessee.

The estimated damage to Mr. Cass's car lot is kind of -- it's kind of a fluid situation because he continues to have vehicles that are brought in with what he believes to be damage that occurred in this original incident, it just wasn't discovered at the time. But that the estimated damage at the time of the transfer hearing was approaching $250,000. It was originally charged as an A felony, but because of that language, approaching $250,000, it was bound over as a B felony, 60 to 250.

The defendant admitted guilt to the crimes as described by the State, and the trial court entered convictions for vandalism (Counts 1, 2, 4) and burglary (Count 3) against the defendant.

- 4 -

The defendant's three victims testified at the subsequent sentencing hearing on May 12, 2017. Scott Cass, the owner of East Tennessee Auto Outlet, stated he had to put his business "on hold" after the defendant burglarized and vandalized his property. Mr. Cass closed his business for "a week or so," noting "[i]t was at least a week" before people could safely walk on the property due to the amount of glass left in the defendant's wake. Regarding the amount of damages Mr. Cass suffered, he explained, "right now it stands at somewhere around at $230,000 range. . . . But like I said earlier, we've still got stuff that's not completed at this point." Mr. Cass explained the "fluid" nature of his damages further, stating some of the damage is not identified until a customer "drives a car and then has it three or four days and then you've got the problem that you never had before." Mr. Cass's insurance policy covered approximately $148,000 worth of damage. A copy of the insurance check was entered into evidence.

Mr. Cass then explained the damage the defendant caused after burglarizing the building on his property. Specifically, the building housed his collection of ten antique cars. The defendant damaged the "[c]hrome, paint, [and] windows" of the antique cars, destroying the "originality" of the vehicles. Mr. Cass described his property as "a war zone" after the defendant's crimes. A surveillance video documenting the defendant's criminal activity on Mr. Cass's property was entered into evidence.

On cross-examination, Mr. Cass testified that in addition to the $230,000 in losses already described, he also paid his employees $22,000 for loss of work while the business was closed for cleaning. In response to questions from the trial court, Mr. Cass stated 71 cars were damaged on his lot of 150 cars, and he believed his total damages to be approximately $250,000.

Ravonda Davis then detailed the damage the defendant caused to her van after she refused to sell him and his co-defendant tobacco. She stated her van "had a dent in the sliding door that opened. The glass -- the glass in the passenger door was broke (sic). And the glass in the sliding door was broke (sic). And it had scratches around it on the windows and had a bad word on the windows." The damages totaled approximately $2,000. Ms. Davis explained she "got scared and terrified" as a result of the defendant's actions, and she no longer wants to work on Friday nights. Photographs of the damaged van were entered into evidence.

Marty Aderhold, a security officer for the Etowah Utility Board, then testified. He explained the defendant and his co-defendant damaged a tractor owned by the utility board. Specifically, the defendant and his co-defendant "took something and poked holes in the radiator. [They] [b]usted all the glass out of the cab, instrument panels, two-way

- 5 -

radios.  They cut some hydraulic lines.  [They] [t]ook something and beat the hood and the headlights and the taillights, everything they could get to they busted, glass wise." Etowah Utility Board paid a $1,000 deductible to repair the damage caused by the defendant, and portions of its operations were "down for a month."  Photographs of the damaged tractor were entered into evidence.

Sherry Gaston interviewed the defendant and prepared a pre-sentence report in this case, which was entered into evidence.  Upon interviewing the defendant and making a risk needs assessment, Ms. Gaston found he "scored out for high for violence" in relation to his likelihood of re-offending and stated the defendant "was very influenced . . . by other people."  Ms. Gaston noted the defendant did not have a prior criminal record.

The parties then stipulated to the entry of the defendant's recorded interview into evidence, and the defendant proceeded with his proof.  Audrianna Tilley testified that her family provided "the last foster home that [the defendant] resided in" before his arrest. Ms. Tilley explained the defendant "was very quiet" at first, but became "very close to [her] family."  However, when the co-defendant also entered the Tilley home, "it kind of just unraveled from there," and she noticed a change in the defendant's behavior "after the first night."  Ms. Tilley offered to provide support to the defendant if granted some form of alternative sentencing.

Ricky Wilson, the defendant's Sunday school teacher and the Director of the Department of Juvenile Services for McMinn County, stated he did not believe the defendant's criminal activity was "normal behavior for him."  He opined that with "a high level" of supervision and a "refrain from other sources of influence," the defendant would be able to comply with probation requirements.  Chase Bennett, the defendant's custodial caseworker for the Tennessee Department of Children's Service, stated the defendant has had several foster home placements and "run away charges" throughout his four years in DCS custody.  Since being in DCS custody, the defendant's longest placement was with the Tilley family.

Upon its consideration of the evidence, the trial court sentenced the defendant to twelve years' incarceration, and the defendant timely appealed.[1]

## ANALYSIS

I.    *Excessive Sentence.*

---

[1] The defendant received jail credit from February 21, 2016 through May 12, 2017.

On appeal, the defendant argues the trial court improperly enhanced his sentence for the Class B felony conviction for vandalism of property in the amount of $60,000 and $250,000 in damages to the maximum of twelve years. The defendant contends the trial court failed to properly consider the applicable enhancing and mitigating factors, and requests "some term" of split confinement. The State asserts the trial court properly considered the applicable enhancing and mitigating factors before sentencing the defendant to twelve years' incarceration. Upon our review, we affirm the twelve-year sentence of Count 4 to be served in confinement.

It is well settled that this Court reviews within-range sentences and alternative sentences imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W. 3d 682, 707 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Once the trial court has determined the appropriate sentencing range, it "is free to select any sentence within the applicable range." *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-210 (d)). When determining a defendant's sentence and the appropriate combination of sentencing alternatives, trial courts are to consider the following factors:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210 (b). The trial court must state on the record the statutory factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210 (e); *Bise*, 380 S.W.3d at 705-06. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. A trial court's sentence "should be upheld so long as it is within the appropriate range and the record demonstrates that the

sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

The 2005 revised sentencing statutes advise that a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102 (6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102 (6). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303 (b)). The defendant must show that the alternative sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

Before imposing a sentence of full confinement, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103 (1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103 (2), -103 (4). Furthermore, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103 (5). The party appealing a sentence bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

Here, the defendant argues the twelve-year sentence imposed by the trial court for his conviction in Count 4 was excessive. We, however, disagree. At the sentencing

hearing, the trial court considered the presentence report, the purposes and principles of sentencing, the evidence presented at the sentencing hearing, the nature and characteristics of the charged offenses, statistical information, and the applicable enhancing and mitigating factors. *See* Tenn. Code Ann. § 40-35-210 (b), (e); *Bise,* 380 S.W.3d at 705-06. The trial court then addressed on the record the statutory factors it considered, stating:

> The pre-sentence investigative report was received and considered. The two things of note, the fact that there is no known record of other criminality, but you did a doozy on this one. That doesn't usurp or mitigate the fact of what was done in this case. The other thing that was extremely significant to this [c]ourt, as of January 1[,] I am to consider the results of a risks and needs assessment. . . . And you are high risk. The highest there is. But most importantly, you're at a high risk for violence. And this [c]ourt thinks that that is striking and remarkable and weighs it significantly against you.

> I've already gone through the nature and characteristics of this level of criminality, which again spans multiple days. Shows a sustained intent to violate the law and increases. Really this micro-aggression of not getting tobacco, that vandalism, just find the tractor do it, find an entire business and just lay ruin to it, it just enhanced and it escalated before you could be caught. The idea that this individual is amenable to correction is -- is folly in this [c]ourt's opinion.

> Statistical information provided by the [c]ourt. I took note of that. As it relates -- this is a Class B felony, and you're not presumed eligible for probation with a B felony. There's no presumption that rests in your favor on an eight to twelve year range. And the only statement the defendant has made about this case is some curt words with a flat affect at time of plea and his audio recording, which was admitted, which, again, this [c]ourt finds expression of no remorse of any kind.

> . . .

> As it relates to mitigating status, this [c]ourt would have to find mitigation and no enhancements. And if I were to find that, the [c]ourt in its discretion pursuant to 40-35-109, he doesn't have a prior record, certainly no -- but there is enhancements in this case. So therefore related to lower release eligibility of lower service of sentence do not apply

because there is enhancement. I'm going to specifically find 40-35-114 that the damage inflicted to property and sustained by these individuals was particularly great.

. . .

The grand jury decided to indict this as a Class B felony. I'll just tell you: I think this is a Class A. I think this was over $250,000. And this [c]ourt's decision of incarceration is impacted by what this [c]ourt feels like by a shade few dollars our law would demand 15 to 25 years mandatory prison. There would be no discussion of mitigation or corrections or anything else. And I believe the testimony was $250,000 or more. And the legislative embodiments that guide this [c]ourt would mean that had it been indicted differently or been indicted by what I accredit the proof, this would be a minimum of 15 years prison. No other questions asked. So prison would be mandated by the level of criminality in this case. You have him talk about that the 220 to $230,000 in restitution is the is the amount that he could to date verify. But if you look at value as it's listed in our definitions section, 39-11-106 subpart 36, value's much greater than that. Number one, his entire business closed for a week. No level related to that.

Also, the victim's not been made whole. Not everything is repaired to date. Classic -- he has been trying, the testimony, reasonable efforts to obtain replacement costs in the case since February of 2016, which is over 15 months. And he's not been able to do so. No accounting of how the fair market value in this case has been diminished by the fact that all of these vehicles were laid to waste, 70 of the 150 on the lot. There's been no accounting in the restitution about how the market value for his classic vehicles. As it stands now, he can't even repair them. So that would be literally almost a total loss from vehicles that he testified have near priceless totals. Paying people to not do their jobs, but paying them commission just to be a good man and a good citizen and a good boss. That was $22,000. He testified, not just in this hearing, but recounted how he testified under oath at the bench trial, and he said I feel comfortable that my loss is at least $250,000. He described numerous times how that was conservative. So once again, I'm going to accredit that testimony and find this should have been an A felony, which means it should have been nothing but prison to be considered to begin with.

But since we are here at a B felony, I'm going to find that that enhancement factor weighs much more considerably against you than any mitigation. I am going to find mitigation that this criminal neither caused nor threatened serious bodily injury. And I'm also going to find a catch-all mitigation, which is your age and lack of literal insight into the way the world works and society functions as mitigation. But that is substantially and severely outweighed by the infliction of damage in this case, which is particularly great.

. . .

But this [c]ourt finds the circumstances of these offenses to be so serious, so grave with such a lack of remorse, such apocalyptic, that as it relates to eight to twelve, this [c]ourt feels that justice is to impose the maximum afforded by law, which is a twelve-year sentence. As I do impose over ten years, you're not eligible for probation. Ten years or less pursuant to 40-35-303.

Upon our review of the record, we agree with the trial court's assessment of the enhancing and mitigating factors applied to the defendant's vandalism conviction of Count 4. In reaching the twelve-year sentence, the trial court considered the defendant's youth and noted his crimes "neither caused nor threatened serious bodily injury." Tenn. Code Ann. § 40-35-113 (1), (6). However, the trial court found the defendant's "level of criminality shocks the conscience," and determined the level of damage the defendant imposed upon Mr. Cass was "particularly great." Tenn. Code Ann. § 40-35-114 (6). Further, the trial court held the defendant was not amenable to correction, noting the defendant demonstrated "no remorse of any kind" and posed "a high risk for violence." After considering the above factors, the record shows the trial court weighed the defendant's lack of criminal history against his level of criminality against Mr. Cass, and found the enhancing factors "severely outweighed" the applicable mitigating factors. Accordingly, it is clear the trial court properly addressed the statutory factors it considered and the reasons for the ordered sentence before imposing a sentence of twelve years in confinement for the defendant's vandalism conviction of Count 4. Tenn. Code Ann. §§ 40-35-114 (6); -303 (a). The defendant is not entitled to relief as to this issue.

## II. Failure to Pronounce Sentences in Counts 1, 2, and 3.

Additionally, our review of the record reveals the trial court failed to separately sentence the defendant for his convictions in Counts 1, 2, and 3. As evidenced by the judgment forms, the defendant received an effective sentence of twelve years'

incarceration. Specifically, the judgment forms indicate the trial court imposed a two-year sentence in Count 1, a six-year sentence in Count 2, a four-year sentence in Count 3, and a twelve-year sentence in Count 4, all run concurrently to each other. Though the judgment forms reflect the individual sentences imposed in each conviction, the trial court failed to articulate the same at the sentencing hearing. Rather, at the hearing, the trial court pronounced the defendant's sentence as simply, "12 years TDOC." The trial court further stated, "I don't find that there's any less restrictive means to achieve justice in this case than 12 years to serve in the Tennessee Department of Correction, credit for time served from February 21, 2016 until today's date." No further pronouncements were made by the trial court as to the sentences imposed for Counts 1, 2, and 3.

As noted above, the trial court must state on the record the statutory factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210 (e); *Bise*, 380 S.W.3d at 705-06. Further, "[t]he record of the sentencing hearing is part of the record of the case and shall include specific findings of fact upon which application of the sentencing principles was based." Tenn. Code Ann. § 40-35-209 (c). While the trial court's sentencing rationale is clear in the record, the trial court failed to articulate the individual sentences for Counts 1, 2, and 3, and the record is absent a written order outlining the same. Tenn. Code Ann. § 40-35-210 (a)-(d); *see also State v. Gauldin*, 737 S.W.2d 795, 798 (Tenn. Crim. App. 1987). Because the trial court failed to comply with Tennessee Code Annotated section 40-35-210, we must remand this case to the trial court for a hearing on the issue of sentencing for Counts 1, 2, and 3.

### III. *Application of the Amended Theft Statute to Count 1.*

Independent of our above analysis, the State contends the trial court erroneously changed the defendant's vandalism conviction in Count 1 from a Class D felony to a Class E felony pursuant to Tennessee Code Annotated section 39-11-112, the criminal saving's statute.[2] The defendant did not address this issue on appeal; however, our

---

[2] Regarding whether this issue is properly before this Court, we agree with the reasoning of another panel of this Court in *State v. Keese*, wherein we determined the State did not have an appeal as of right or a statutory right to appeal a trial court's application of the criminal saving's statute to a defendant's theft conviction. *State v. Charles Keese*, No. E2016-02020-CCA-R3-CD, __ WL __, (Tenn. Crim. App., Knoxville, December 19, 2017). The *Keese* court reasoned the issue presented by the State contemplated the offense classification system of theft, rather than the applicable sentencing range for theft and thus, it did not fall under the State's limited appellate options of Rule 3 of the Tennessee Rules of Appellate Procedure or Tennessee Code Annotated section 40-35-402. However, in finding the issue to be one of statutory interpretation rather than sentencing, the *Keese* court determined the issue to be a question of law, which could be properly raised by either party after the defendant initiated a timely appeal. Tenn. R. App. P. 13 (a); *see State v. Russell*, 800 S.W.2d 169, 171 (Tenn. 1990). Based upon this

review affirms the trial court's application of the criminal saving's statute to the defendant's vandalism conviction of Count 1.

This Court is called to review issues of statutory construction de novo with no presumption of correctness. *State v. Howard*, 504 S.W.3d 260, 267 (Tenn. 2016) (citing *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015)). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *State v. Howard*, 504 S.W.3d 260, 269 (Tenn. 2016) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). The intent of the legislature is determined "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). "When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use." *Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003) (citing *State v. Nelson*, 23 S.W.3d 270, 271 (Tenn. 2000)). "It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources." *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)).

At work in this appeal is the relationship between the vandalism, theft, and criminal saving's statutes found in Tennessee Code Annotated sections 39-11-112, 39-14-105, and 39-14-408. Regarding the relationship between the three statutes, the State asserts that within the context of the defendant's vandalism conviction of Count 1, "[t]he value of property damaged is a question of fact for the fact finder," and thus, an element of the offense. According to the State, "the amended [theft] statute redefined the essential element of value and assigned offense classifications to the new value ranges." As a result, the State argues the criminal saving's statute does not apply to Count 1 "[b]ecause the amendments to Tenn[essee] Code Ann[otated] [section] 39-14-105 altered an element of vandalism," rather than altering the penalty for the offense. We, however, disagree. Upon our review of the statutes at issue, it is clear the amended theft statute provides the defendant with a "lesser penalty" for his vandalism conviction, thus invoking the criminal saving's statute. Tenn. Code Ann. § 39-11-112.

Our statutory analysis begins under the general principle that "a criminal offender must be sentenced pursuant to the statute in effect at the time of the offense." *State v. Smith*, 893 S.W.2d 908, 919 (Tenn. 1994) (citing *State v. Reed*, 689 S.W.2d 190, 196

---

reasoning, we, like the *Keese* court, will address the trial court's application of the criminal saving's statute to the defendant's vandalism conviction, as raised by the State on appeal.

(Tenn. Crim. App. 1984); 24 C.J.S. Criminal Law, § 1462 (1989)).  The exception to this rule is found in Tennessee Code Annotated section 39-11-112, also known as the criminal saving's statute.  The exception provides:

> When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense.  *Except as provided under § 40-35-117, in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act.*

Tenn. Code Ann. § 39-11-112 (emphasis added).  It is within this context that we review whether the criminal saving's statute applies to the defendant's vandalism conviction of Count 1 by way of the amended theft statute found in Tennessee Code Annotated section 39-14-105.

In Count 1, the defendant was indicted under the vandalism statute of Tennessee Code Annotated section 39-14-408.  Per statute, "[a] person commits the offense of vandalism who knowingly: [c]auses damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent;" or "[d]amages merchandise offered for retail sale by a retail merchant."  Tenn. Code Ann. § 39-14-408 (b)(1), (b)(3).  The statute orders a trial court to impose punishment for vandalism under the theft statute, stating: "[a] person violating subdivision (b)(1) or (b)(3) is a principal under § 39-11-401 *and shall be punished as for theft under § 39-14-105*, after determining value under § 39-11-106."  Tenn. Code Ann. § 39-14-408 (c)(1) (emphasis added).  Tennessee Code Annotated section 39-11-106 defines "value" as "[t]he fair market value of the property or service at the time and place of the offense," or "[i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense."  Tenn. Code Ann. § 39-11-106 (36)(A)(i), (ii).  Thus, value is a separate consideration from the penalty imposed under the vandalism statute.  Tenn. Code Ann. § 39-14-408 (c)(1).

We now turn to whether the exception outlined above applies to the defendant's vandalism conviction through the amended theft statute.  At the time of the defendant's crimes and convictions, Tennessee Code Annotated section 39-14-105 defined theft offenses and their correlating felony classification by the value of damages levied by a defendant's criminal activity.  The theft statute provided:

- 14 -

(a) Theft of property or services is:

. . .

(2) A Class E felony if the value of the property or services obtained is more than five hundred dollars ($500) but less than one thousand dollars ($1,000);

(3) A Class D felony if the value of the property or services obtained is one thousand dollars ($1,000) or more but less than ten thousand dollars ($10,000)[.]

Tenn. Code Ann. § 39-14-105 (a)(2), (a)(3).  However, the Public Safety Act of 2016 amended the valuation and offense classification system for theft.  2016 Pub. Acts, c. 906.  The amended theft statute provides:

(a) Theft of property or services is:

. . .

(2) A Class E felony if the value of the property or services obtained is more than one thousand dollars ($1,000) but less than two thousand five hundred dollars ($2,500);

(3) A Class D felony if the value of the property or services obtained is two thousand five hundred dollars ($2,500) or more but less than ten thousand dollars ($10,000)[.]

Tenn. Code Ann. § 39-14-105 (a)(2), (a)(3) (2017).  Accordingly, after the amendment, a theft resulting in damages between $1,000 and $2,500 shifted from a Class D felony to a Class E felony.[3]

Looking to the normal and ordinary meaning of the statutory language, the vandalism statute specifically provides that "*after* determining value," the defendant

---

[3] We also note, Tennessee Code Annotated section 39-14-103 outlines the general elements of theft, providing: "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (a).

"*shall be punished* as for theft under § 39-14-105." Tenn. Code Ann. § 39-14-408 (c)(1) (emphasis added). The Sentencing Commission Comments make clear that the theft statute at issue is, in effect, a sentencing statute, explaining the statute "provides the *punishment* for the offenses of theft. These offenses are *punished* according to the value of the property or services obtained." Tenn. Code Ann. § 39-14-105, Sentencing Comm'n Comm't (emphasis added). The comments further note that "[v]alue is defined in § 39-11-106." *Id.* Thus, the theft statute is applicable to a defendant who has committed vandalism at the punishment phase.

In Count 1, the defendant was indicted for the Class D felony of vandalism of property in the amount of $1,000 and $10,000 for his actions committed on February 20, 2016. Tenn. Code Ann. § 39-14-408. On December 5, 2016, the defendant pled guilty to the same. As explained above, prior to the entry of judgment against the defendant, our legislature amended Tennessee Code Annotated section 39-14-105 to reflect a change in the offense classification system of theft, and in turn vandalism. The amended version of Tennessee Code Annotated section 39-14-105 went into effect on January 1, 2017.

At the sentencing hearing on May 12, 2017, the State offered testimony from the victim in Count 1, Ms. Davis, who stated the defendant inflicted $2,000 in damages on her van. Tenn. Code Ann. § 39-11-106. As such, the *punishment* applicable to the defendant's vandalism conviction in Count 1 moved from a Class D felony to a Class E felony under the amended theft statute. Tenn. Code Ann. § 39-14-105 (a)(2). Though the defendant committed the vandalism of Count 1 before the legislature amended the theft statute, because the amended theft statute provided for a "lesser penalty," the criminal saving's statute applied to the defendant's conviction. Tenn. Code Ann. § 39-11-112. Accordingly, the trial court appropriately sentenced the defendant for a Class E felony in Count 1 after applying the criminal saving's statute to the conviction.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the twelve-year sentence imposed in Count 4, but remand this cause to the trial court for a hearing to include findings of fact as to the reasons for the ordered sentences in Counts 1, 2, and 3. We further direct the trial court to apply the criminal saving's statute to the defendant's conviction in Count 1.

_____
J. ROSS DYER, JUDGE