IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 20, 2025, at Knoxville

**STATE OF TENNESSEE v. BRIAN LEE FISK**

**Appeal from the Circuit Court for Dyer County**
**No. 22CR300       Tony Childress, Chancellor[1]**

_____

**No. W2024-00882-CCA-R3-CD**

_____

Defendant, Brian Lee Fisk, appeals his Dyer County Circuit Court jury conviction of the sale of .5 grams or more of cocaine within a Drug-Free Zone, *see* Tenn. Code Ann. § 39-17-432 (2014), challenging the sufficiency of the convicting evidence and the sentencing decision of the trial court. Because the evidence was sufficient to support his conviction and because the trial court did not commit plain error by sentencing Defendant under the terms of the Drug-Free Zone Act in effect at the time of the offense, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and TIMOTHY L. EASTER, J., joined.

Joseph S. Ozment, Memphis, Tennessee (on appeal); and Jeremy Armstrong, Assistant District Public Defender (at trial), for the appellant, Brian Lee Fisk.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Lance Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Dyer County Grand Jury charged Defendant via indictment returned on December 12, 2022, with the January 28, 2020 sale of .5 grams or more of cocaine within 500 feet of an elementary school. The jury convicted Defendant as charged, and, following a sentencing hearing, the trial court imposed a Range II sentence of twenty-five years' incarceration. Defendant appeals both his conviction and sentence.

---

[1] Sitting by interchange.

## Factual and Procedural Background

The conviction in this case relates to a controlled transaction during which Defendant sold .92 grams of cocaine to John Williams, who was then working as a confidential informant for the Tennessee Bureau of Investigation ("TBI").

## I. Trial

TBI Special Agent Jeff Jackson confirmed that Mr. Williams was promised leniency in his own criminal case in exchange for his participating in six controlled purchases and testifying in court about all of them. Mr. Williams confirmed that after he participated in "a total of about four or five" controlled drug purchases, he pleaded guilty to a reduced charge of misdemeanor theft in exchange for a sentence of eleven months and twenty-nine days and dismissal of a charge of making a false report; he was placed on judicial diversion. Mr. Williams did not stand to gain any further from the outcome of this case.

As relevant to this case, Mr. Williams arranged to purchase an "eight-ball" of cocaine from Defendant for $300. Agent Jackson and Mr. Williams offered nearly identical accounts of the ensuing transaction, which we summarize below.

After searching Mr. Williams' person and vehicle, TBI agents provided him with $300 buy money and outfitted his person and vehicle with recording equipment. The equipment also had the capability for live monitoring by agents, and agents did just that from a nearby location. Upon arriving at the appointed location, Mr. Williams waited for Defendant, and after Defendant arrived, the two men went into the house at the prearranged address. Inside, Defendant gave Mr. Williams what he said was an "eight-ball," or an eighth of an ounce, of crack cocaine in exchange for the $300. Mr. Williams noted that the weight "was kind of off," but he did not have a scale to confirm his suspicion. Afterwards, Defendant asked Mr. Williams where he had obtained the buy money and remarked that Mr. Williams "look[ed] suspicious."

A video recording of the transaction, as well as the procedures before and after, was admitted into evidence and played for the jury. Still photographs captured from the recording were also admitted into evidence.

Mr. Williams identified Defendant as the person from whom he purchased drugs during the controlled buy on January 28, 2020, in Dyersburg. Mr. Williams said Defendant had dreadlocks at the time of the transaction, and the State introduced photos of Defendant depicting the change in his appearance over time.

TBI Special Agent and Forensic Scientist Rachel Strandquist determined that the off-white, rock-like substance associated with this case was .92 grams of cocaine base. Carmen Cupples, Geographic Information System manager for Dyer County and the City

of Dyersburg, testified that Dyersburg Intermediate School was located 375 feet from the residence where the controlled purchase took place.

Based upon this evidence, the jury convicted Defendant as charged.

## II. Sentencing Hearing

Dyersburg Mayor John Holden testified that he was familiar with the Defendant's family and that he "thought a lot of" Defendant. Mr. Holden described Defendant as "polite, professional, courteous." Similarly, Lynn Garner, Defendant's high school coach, testified that Defendant "was always a happy kid, smiling kid, unselfish player." Mr. Garner said that he was "disappointed" to learn of Defendant's conviction. Defendant's mother, Sheila Fisk, described the thirty-nine-year-old Defendant as "a respectful young man" and "a good daddy" who takes care of his young son.

Defendant testified that he had spent the four years between the offense and the sentencing hearing working to become "a better man" and that his son had "changed [him] for the best." Defendant acknowledged that he had "a few felony drug" convictions but said that he had successfully completed his sentences. He said that, should he be afforded a sentence in the community, he planned to "get a job and do what I'm supposed to do for my son and my family." Defendant stated he wanted to give back to his community as well. Defendant attributed the offense to "circumstances," including the COVID-19 pandemic. When asked by his counsel, Defendant agreed that the minimum sentence he could receive was twenty-five years to be served at 100 percent.

The presentence report, which was exhibited to the hearing, established that Defendant was convicted of two counts of the sale of less than .5 grams of cocaine in 2017; violating the financial responsibility law in 2016; and the sale of dihydrocodeinone, marijuana, and a counterfeit controlled substance in 2011. The Strong-R Assessment indicated that Defendant was a moderate-risk offender. The report also established that, while serving a sentence of supervised probation for his 2017 convictions of the sale of cocaine, Defendant repeatedly tested positive for the use of marijuana. A 2011 placement on judicial diversion was revoked less than three months after it began.

The State argued that Defendant should be sentenced under the version of Code section 39-17-432 ("Drug-Free Zone Act") in effect at the time of the offense but acknowledged that after the court imposed a sentence under the former version of the statute, Defendant would be permitted to petition the trial court for resentencing under the amended version of the statute. The State also argued that the trial court should apply enhancement factors one and eight. *See* Tenn. Code Ann. § 40-35-114(1), (8).

Defendant "recognize[d] that the case law says that the old law applies. And that would be a minimum of, based on his range, of 25 years at 100 percent." When pressed by the trial court, Defendant again agreed that the minimum sentence the trial court could

3

impose was twenty-five years to be served at 100 percent. Despite these concessions, Defendant stated that he was "preserving it for appeal." Defendant stated that "there would be an opportunity" for him "to file for re-sentencing on this matter under the new statute" and that "if that were to become available, I can submit it at that point." Defendant argued that "a plain reading" of the community corrections statute "would qualify him for it" and asked the court to place him on community corrections.

### III. Trial Court's Findings

The trial court found that Defendant was a Range II offender based on his two prior Class C felony convictions. The court used Defendant's remaining convictions to support application of enhancement factor one, that Defendant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range. *See* Tenn. Code Ann. § 40-35-114(1). The trial court applied enhancement factor eight based on Defendant's previous failure to comply with a sentence involving release into the community. *See* Tenn. Code Ann. § 40-35-114(8). The trial court found in mitigation that Defendant's conduct neither caused nor threatened bodily injury but declined to find that Defendant's offense was provoked by the COVID-19 pandemic because it was not "happening at the time in January of 2020."

The court concluded that, based on its interpretation of the case law, it had no discretion to impose an alternative sentence. The court also concluded that, based on its interpretation of the case law and on Defendant's concessions, Defendant had to be sentenced under the version of the Drug-Free Zone Act in effect at the time of the offense. The trial court imposed a sentence of twenty-five years' incarceration to be served at 100 percent. The court also imposed the minimum fine of $2,000 but, at the State's behest, suspended the fine.

### IV. Motion for New Trial

At the hearing on Defendant's timely filed motion for new trial, Defendant challenged the sufficiency of the convicting evidence and the admission of the identification photographs depicting the change in Defendant's appearance over time. Notably, Defendant did not challenge the sentencing decision of the trial court and did not petition for resentencing under the amended Drug-Free Zone Act. *See* Tenn. Code Ann. § 39-17-432(h)(1) (Supp. 2022).

Regarding the sufficiency challenge, Defendant argued that the video recording failed to show "any drugs" or "money change hands" and, accordingly, "does not show a sale." He argued that Mr. Williams' testimony was not credible and that the State had failed to establish a chain of evidence for the substance tested by the TBI, which, he argued, was "an order of magnitude lower than would be expected." Defendant argued that the photographs were cumulative given the testimony identifying Defendant as the person who sold drugs to Mr. Williams.

4

The trial court denied the motion for new trial. This timely appeal followed.

**Analysis**

On appeal, Defendant again challenges the sufficiency of the convicting evidence. He also argues for the first time that the trial court should have sentenced him under the terms of the Drug-Free Zone Act in effect at the time of the sentencing hearing. We consider each claim in turn.

I. Sufficiency of the Evidence

Defendant challenges the sufficiency of the convicting evidence, arguing that "significant weaknesses" in the proof "highlight gaps in the reliability of the evidence and the credibility of the witnesses." The State contends that the evidence was sufficient.

We review a challenge to the sufficiency of the convicting evidence to determine whether, "after viewing the evidence in the light most favorable to the prosecution" and providing the State with "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom," "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citations omitted); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citations omitted); Tenn. R. App. P. 13. Our review "is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both." *State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018) (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)). Importantly, a guilty verdict removes the presumption of innocence and replaces it with one of guilt on appeal, shifting the burden to the defendant to demonstrate why the evidence is legally insufficient to support the conviction. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

We decline Defendant's invitation to revisit witness credibility or any purported discrepancies in the evidence because the jury, not this court, resolves all questions involving the credibility of the witnesses, the weight and value to be given to evidence, and the factual disputes raised by such evidence. *See Dorantes*, 331 S.W.3d at 379 (citing *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). Accordingly, this court will neither re-weigh nor reconsider the evidence when evaluating the sufficiency of the convicting proof. *State v. Stephens*, 521 S.W.3d 718, 724 (Tenn. 2017).

To support Defendant's conviction of the sale of .5 grams or more of cocaine, the State was required to establish that Defendant knowingly sold more than .5 grams of "any substance containing cocaine." *See* Tenn. Code Ann. § 39-17-417(a)(3), (c)(1). The evidence adduced at trial established that Mr. Williams arranged to purchase an "eight-ball" of cocaine from Defendant in exchange for $300. The video recording of the ensuing transaction as well as Mr. Williams' testimony established that Defendant gave Mr. Williams crack cocaine and that Mr. Williams gave Defendant the $300 in buy money. That

5

the amount of cocaine Defendant sold to Mr. Williams was not the agreed upon "eight-ball" does not change the fact that Defendant was guilty of selling Mr. Williams .92 grams of cocaine.

The indictment alleged that the cocaine sale took place within 500 feet of an elementary school. Code section 39-17-432 currently provides the trial court with discretion to impose enhanced penalties for the sale of drugs within *500 feet* of an elementary school. *See* Tenn. Code Ann. § 39-17-432(b)(1)(B) (Supp. 2022). At the time of the offense, however, that same statute mandated enhanced penalties for the sale of drugs within *1,000 feet* of an elementary school. *See* Tenn. Code Ann. § 39-17-432(b)(1) (2014). Neither party mentioned the discrepancy, which benefited Defendant, either at trial or in their appellate briefing. Most importantly, however, testimony from Mr. Cupples established that Dyersburg Intermediate School was located 375 feet from the location of the transaction, satisfying the elements under either version of the statute. This evidence was sufficient to support Defendant's conviction.

## II. Sentencing

Defendant asserts for the first time on appeal that the trial court erred by sentencing him under the terms of the Drug-Free Zone Act in effect at the time of the offense instead of the version in effect at the time of the sentencing hearing, arguing that the amended version of the statute was in effect at the time of the indictment and that, in any event, the application of the criminal savings statute entitles him to sentencing under the amended version of the statute. The State argues that the trial court did not err.

After briefing was complete and upon review of the record in this case, we ordered the parties to file supplemental briefs addressing "the effect, if any," of Defendant's concessions regarding the applicable law "during the sentencing hearing" and focusing on whether Defendant was limited to seeking plain error review. In his supplemental brief, Defendant concedes that he "acquiesce[d]" to the application of the prior version of the Drug-Free Zone Act and that, consequently, he is limited to plain error review. He asserts that he is entitled to plain error relief and, alternatively, that his sentence was "illegal" because it was imposed in contravention of the criminal savings statute. The State argues that Defendant is not even entitled to review for plain error because he "affirmatively invited" the error;[2] that, in any event, he is not entitled to plain error relief because the trial

---

[2] For this assertion, the State relies on a footnote from *State v. Garrens*, wherein this court questioned the availability of plain error review "when the error asserted on appeal was affirmatively invited by the defendant in the trial court." *State v. Garrens*, No. W2024-00258-CCA-R3-CD, 2025 WL 1307696, at *9 (Tenn. Crim. App. May 6, 2025) (first citing *State v. Harris*, No. W2015-00500-CCA-R3-CD, 2016 WL 2594964, at *7 (Tenn. Crim. App. May 3, 2016); and then *State v. Towry*, No. 01C01-9310-CC-00363, 1994 WL 168738, at *4 (Tenn. Crim. App. May 5, 1994)). Because the State did not raise this issue before supplemental briefing and because the law is less than clear in this area, we will not consider it further here.

6

court did not breach a clear and unequivocal rule of law; and that Defendant's illegal sentence claim exceeds the scope of the supplemental briefing request and is without merit.

## A. Waiver

"Appellate review generally is limited to issues that a party properly preserves for review by raising the issues in the trial court and on appeal." *State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018) (first citing Tenn. R. Crim. P. 51; and then Tenn. R. Evid. 103(a)-(b); and then Tenn. R. App. P. 3(e), 13(b), 27(a)(4), and 36(a); and then *State v. Bledsoe*, 226 S.W.3d 349, 353-54 (Tenn. 2007)). The parties agree, and we conclude, based on the record before us, that Defendant has waived plenary review of this issue. Defendant failed to take the first and simplest step to preserve his issue when he did not ask to be sentenced pursuant to the amended version of the Drug-Free Zone Act. *See State v. Reynolds*, 635 S.W.3d 893, 926-27 (Tenn. 2021) (observing that issue preservation begins with raising an issue in the trial court) (citations omitted). Defendant did not simply "acquiesce" to being sentenced under the former version of the Drug-Free Zone Act but repeatedly confirmed to the trial court that he should be sentenced pursuant to the version of the Act in effect at the time of the offense. *See* Tenn. R. App. P. 36, Sentencing Comm'n Cmt. ("[A] party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error."). Defendant can hardly be surprised, then, that he was so sentenced. *See Bledsoe*, 226 S.W.3d at 358 ("It is difficult to fault the trial court and find 'plain error' for not charging duress when, based on the record provided, it was never discussed as a theory of the defense, and the Defendant affirmatively waived an instruction on self-defense which, under the facts of this case, was an analogous defense to duress."). That being said, we will review the issue to determine whether the trial court committed plain error by accepting Defendant's concessions.

## B. Plain Error

"When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). Our supreme court has addressed a challenge to the application of the sentence enhancement provisions of Code section 39-17-432 under the plain error doctrine. *See State v. Linville*, 647 S.W.3d 344, 353 (Tenn. 2022). Plain error review should be "sparingly exercised[,]" *see Bledsoe*, 226 S.W.3d at 354, and confined to errors that are "especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding," *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006).

When considering a claim under the plain error doctrine, this court considers whether:

> (1) the record clearly establishes what occurred in the trial court; (2) a clear
> and unequivocal rule of law was breached; (3) a substantial right of the

accused was adversely affected; (4) the issue was not waived for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

*Linville*, 647 S.W.3d at 353-54 (citation omitted); *see also State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000). To obtain relief under this doctrine, the defendant bears the burden of persuading this court "that the trial court committed plain error" and that the error was of sufficient magnitude "that it probably changed the outcome of the trial." *Bledsoe*, 226 S.W.3d at 354 (Tenn. 2007) (first quoting *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994), and then citing *United States v. Olano*, 507 U.S. 725, 731-32 (1993)). Importantly, "'complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established.'" *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016) (quoting *Smith*, 24 S.W.3d at 283). "Whether the elements of the plain error doctrine have been satisfied is a question of law." *Linville*, 647 S.W.3d at 354 (quoting *State v. Knowles*, 470 S.W.3d 416, 423 (Tenn. 2015)).

Defendant argues that the resentencing contemplated in Code section 39-17-432(h)(1) only applies to sentences imposed before the effective date of the 2022 amendment for offenses committed before September 1, 2020, and that, as a result, he is left in a procedural gap because his offense was committed before September 1, 2020, but he was not sentenced until after the effective date of the 2022 amendment to the statute. He asserts that the trial court should have applied the terms of the criminal savings statute to address the procedural gap and that the court's failure to do so resulted in plain error. The State argues that the trial court did not plainly err.

Here, Defendant's bid for relief via plain error review turns on whether the trial court breached a clear and unequivocal rule of law. "That question presents an issue of statutory construction in this case," which "entails questions of law." *Linville*, 647 S.W.3d at 354 (first citing *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020); and then *State v. Smith*, 436 S.W.3d 751, 761-62 (Tenn. 2014)) (engaging in statutory interpretation to determine whether trial court committed plain error in sentencing the defendant). The most basic principle of statutory construction is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). "Legislative intent is determined 'from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.'" *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004) (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)). "When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use." *Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003) (citing *State v. Nelson*, 23 S.W.3d 270, 271 (Tenn. 2000)). "It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources." *In re Estate of Davis*,

308 S.W.3d 832, 837 (Tenn. 2010) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)).

"Generally, a criminal offender must be sentenced pursuant to the statute in effect at the time of the offense." *State v. Smith*, 893 S.W.2d 908, 919 (Tenn. 1994) (citations omitted). Code section 39-11-112, however, provides an exception to this general rule:

> When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense. Except as provided under § 40-35-117, in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act.

Tenn. Code Ann. § 39-11-112. As our supreme court has explained, "the general provisions of § 39-11-112 and the principles against retroactive application of statutes mandate that an offense committed under a repealed or amended law shall be prosecuted under that law." *State v. Cauthern*, 967 S.W.2d 726, 747 (Tenn. 1998) (first citing *State v. Smith*, 893 S.W.2d 908, 919 (Tenn. 1994); and then *State v. Brimmer*, 876 S.W.2d 75, 82 (Tenn. 1994)). "The second sentence creates an exception for ameliorative legislation that 'provides for a lesser penalty.'" *State v. Deberry*, 651 S.W.3d 918, 926 (Tenn. 2022) (quoting Tenn. Code Ann. § 39-11-112).

Defendant committed the conviction offense on January 28, 2020, at which time the relevant portions of Code section 39-17-432 mandated that violations of Code section 39-17-417 occurring "on the grounds or facilities of any school or within one thousand feet (1,000′) of the real property that comprises a public or private elementary school" be "punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation." Tenn. Code Ann. § 39-17-432(b)(1) (2014). The statute also required defendants sentenced under this section to "serve at least the minimum sentence for the defendant's appropriate range of sentence." *Id.* § 39-17-432(c). As is relevant here, the legislature removed the mandatory sentence enhancements and minimum sentence requirements in 2020 and replaced them with provisions affording the trial court discretion to apply those same provisions. *See* Tenn. Code Ann. § 39-17-432(b)(1) (2020) ("A violation of § 39-17-417, or a conspiracy to violate the section, *may* be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) . . . .") (emphasis assed); *id.* § 39-17-432(c)(1) (2020) ("[A] defendant sentenced for a violation of subsection (b) *may* be required to serve at least the minimum sentence for the defendant's appropriate range of sentence.") (emphasis added). Then, in 2022, the legislature amended the statute to provide an avenue for resentencing under the new discretionary provisions:

9

Notwithstanding subsection (d) or (e) or any other law to the contrary, the court that imposed a sentence for an offense committed under this section that occurred prior to September 1, 2020, may, upon motion of the defendant or the district attorney general or the court's own motion, resentence the defendant pursuant to subsections (a)-(g). . . .

Tenn. Code Ann. § 39-17-432(h)(1) (Supp. 2022).

In our view, the plain language of the statute does not, as Defendant suggests, limit application of subsection (h)(1) to only those sentences imposed before the effective date of the amendment. Examining the plain language of the statute through the lens of the generally accepted rules of grammar, we see that the phrase "the court that imposed a sentence for an offense committed under this section that occurred prior to September 1, 2020" is a noun phrase that describes *the court* that may entertain a resentencing motion.[3] *See id.* This reading leads us to conclude, as have other panels of this court, that the 2022 amendment to the Drug-Free Zone Act applies to any "defendant who was sentenced under the pre-2020 version of the Act for offenses committed before September 1, 2020" but does not entitle defendants sentenced after its effective date whose offense occurred before September 1, 2020, to be sentenced under the amended version of the Act *in the first instance*. *See State v. McKenzie*, No. E2021-00445-CCA-R3-CD, 2022 WL 2256338, at *10 (Tenn. Crim. App. June 23, 2022); *perm. app. denied* (Tenn. Nov. 16, 2022); *see also, e.g.*, *State v. Ewing*, No. E2023-01705-CCA-WR-CO, 2025 WL 712890, at *4 (Tenn. Crim. App. Mar. 5, 2025) (stating "[w]hereas the 2020 amendments to the Act only applied to defendants who committed a drug offense *after* September 1, 2020, the new subsection (h) allowed defendants convicted of a drug offense in a drug-free school zone before July 1, 2005, or in a drug-free zone from July 1, 2005, to August 31, 2020, to seek resentencing"); *State v. Minnifee*, No. E2023-00107-CCA-R3-CD, 2024 WL 1480217, at *7 (Tenn. Crim. App. Apr. 5, 2024) (observing that the 2022 amendment applies to defendants whose "sentence [was] enhanced one classification higher or who had been sentenced to a mandatory minimum sentence, to move for resentencing"), *no perm. app. filed* (citation omitted). Furthermore, we agree with other panels of this court that application of the criminal savings statute does not entitle those who committed a drug offense before September 1, 2020, to be sentenced via the 2020 amendments to the Drug-Free Zone Act. *See McKenzie*, 2022 WL 2256338, at *10; *see also State v. Beasley*, No. E2021-01483-CCA-R3-CD, 2023 WL 3267791, at *9 (Tenn. Crim. App. May 5, 2023), *perm. app. denied* (Sept. 12, 2023); *State v. Hamlin*, No. E2022-00139-CCA-R3-CD, 2023 WL 177105, at *5 (Tenn. Crim. App. Jan. 10, 2023), *perm. app. denied* (Tenn. May 10, 2023). Accordingly, the trial court did not breach a clear and unequivocal rule of law by sentencing Defendant under the terms of the Drug-Free Zone Act in effect at the time of his offense. *See State v.*

---

[3] A noun phrase is "a phrase formed by a noun and all its modifiers and determiners" and "any syntactic element (such as a clause, clitic, pronoun, or zero element) with a noun's function (such as the subject of a verb or the object of a verb or preposition)." *See Noun Phrase*, Merriam-Webster, https://www.merriam-webster.com/dictionary/noun%20phrase (last visited Sept. 22, 2025).

*Quinn*, No. E2022-01661-CCA-R3-CD, 2024 WL 1097642, at *25 (Tenn. Crim. App. Mar. 13, 2024), *perm. app. denied* (July 18, 2024) ("Because the Criminal Savings Statute does not require retroactive application of the 2020 amendment, the trial court should have applied the version of the law in effect at the time of the offense."). Thus, Defendant has failed to satisfy the criteria for plain error review and is not entitled to relief.

### *C. Illegal Sentence*

Finally, Defendant, citing Tennessee Rule of Criminal Procedure 36.1, argues for the first time in his supplemental brief that his sentence is illegal and asks this court to remand the case to the trial court for a Rule 36.1 hearing. We will not consider this claim because it was raised for the first time in Defendant's supplemental brief, meaning that he failed to raise it in the trial court, *see* Tenn. R. Crim. P. 36.1 ("Either the defendant or the state may seek to correct an illegal sentence by filing a motion to correct an illegal sentence *in the trial court* in which the judgment of conviction was entered." (emphasis added)), or in his principal brief in this court, *see* Tenn. R. App. P. 27(a)(7) (stating that the appellant's brief must set forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record."). It is worth noting, too, that Defendant's sentence of twenty-five years to be served at 100 percent is authorized for his conviction by Code section 39-17-432 in both its current and former iterations.

Should Defendant desire resentencing, he must petition the trial court to do it. As we have previously explained, "the proper vehicle for resentencing" under Code section 39-17-432(h)(1) is by motion to the trial "court that imposed [the] sentence." *State v. Dunlap*, No. E2022-00593-CCA-R3-CD, 2023 WL 5976778, at *10 (Tenn. Crim. App. Sept. 14, 2023) (first citing Tenn. Code Ann. 39-17-432(h)(1) (Supp. 2022); and then *Hamlin*, 2023 WL 177105, at *6). We lack the "statutory authority to compel the trial court . . . to consider whether resentencing is appropriate pursuant to the 2022 amendments." *Dunlap*, 2023 WL 5976778, at *10 (quoting *Hamlin*, 2023 WL 177105, at *6).

### Conclusion

Because the evidence was sufficient to support his conviction and because the trial court did not commit plain error by sentencing Defendant under the terms of the Drug-Free Zone Act in effect at the time of the offense, we affirm the judgment of the trial court.

s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE

11